Donald Seale JOHNSON and Amanda Adeline Johnson, Respondents,

v.

Roger L. STULL and Virginia L. Stull, his Wife, John C. Schwarz and Anna C. Schwarz, his Wife, William Daniels, Jas. W. Strouse, Trustee for Sylvester F. Witte, and Sylvester F. Witte, Cestui Que Trust, Appellants,

Elmer Louis Kramer and Olivia Mae Kramer, his Wife, Defendants,

St. John's Community Bank, a Banking Corporation, Intervenor-Appellant.

No. 45356.

Supreme Court of Missouri, Division No. 1.

May 13, 1957.

Opinion Modified on Court's Own Motion June 10, 1957.

Motions for Rehearing or to Transfer to Court en Banc or to Modify Denied June 10, 1957.

Homer A. Cope, D. C. Briggs, Kansas City, N. Murry Edwards, Ninian M. Edwards, St. Louis, for plaintiffs-respondents.

Alexander & Robertson, L. A. Robertson, St. Louis, for appellants, Roger L Stull and Virginia L. Stull.

Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Clayton, for appellants, John C. Schwarz, Anna C. Schwarz, William Daniels, Jas. W. Strouse, and St. John's Community Bank.

COIL, Commissioner.

Plaintiffs below brought this equitable action for relief based upon their alleged ownership of lot 16 on Manchester Road in Rock Hill, St. Louis County. Certain of the defendants have appealed from a judgment that plaintiffs owned the lot as joint tenants and were entitled to a money judgment.

Plaintiff Amanda A. Johnson, at trial time a widow 70 years of age, had resided in Kansas City, Missouri, continuously for

39 years and for the five years preceding the trial in the same house. In 1926, through an installment purchase agreement, Mrs. Johnson contracted to purchase (as trustee for her son Donald) lot 16 for a total price of $1,250. In January 1933, after the purchase price had been paid, the lot was conveyed to Donald S. Johnson who, with his mother, then resided in St. Louis. On March 3, 1943, Donald Johnson, then single, conveyed the lot by warranty deed to Dorothy Putthoff, a straw party, who, in turn, on March 10, 1943, conveyed the lot by warranty deed to Donald S. Johnson, a single person, and Amanda A. Johnson, a single person, as joint tenants. Both the last-mentioned deeds were recorded in the St. Louis County recorder's office and, in the deed last mentioned, Donald S. Johnson and Amanda A. Johnson were described as being "of the County of Jackson, State of Missouri."

On August 22, 1949, lot 16 was sold for taxes due the City of Rock Hill for the years 1937 to 1944, inclusive. It was purchased by C. E. Holt, who thereafter assigned his certificate of purchase to Roger L. Stull, who, after waiting the required time, obtained a collector's deed dated February 1, 1952, reciting that the lot had been sold to him for $81.92, being the amount of taxes due the City of Rock Hill for the years 1937 to 1947, inclusive. That deed was recorded on February 8, 1952. On February 27, 1952, Roger Stull, the grantee in the collector's deed above described, filed an action in the St. Louis County Circuit Court to quiet title to lot 16. Paragraph 6 of that petition was:

"Plaintiff further states that the defendants Donald Seale Johnson and Amanda Adeline Johnson, if living, and if deceased, the unknown heirs, successors and assigns of Donald Seale Johnson, deceased, and Amanda Adeline Johnson, deceased, are either non-residents of the State of Missouri, or have absented themselves from their usual place of abode within the State of Missouri, or are unknown and cannot be found within the State of Missouri, and

cannot be served with ordinary process of law, and that their present address is unknown to the plaintiff." Plaintiff asked "for an order of publication notifying the defendants named in paragraph 6 of the commencement of this action."

One of plaintiffs' attorneys swore that those allegations were "true and correct to the best of his knowledge, information and belief." On the same February 27, an order of publication was granted and an insertion in a weekly St. Louis County newspaper was directed to Donald Seale Johnson and Amanda Adeline Johnson, if living, and if deceased, to their unknown heirs, successors and assigns, notifying them of the commencement of an action to quiet title to lot 16 and advising that unless they filed an answer or other pleading within 45 days after February 29, 1952, a default judgment would be rendered. On May 2, 1952, an attorney was appointed to represent all defendants. On May 12, defendants' answers were filed and, on May 15, plaintiff appeared in person and by attorney and defendants by their attorney so appointed, and the cause was taken under advisement. On May 16, 1952, the court entered its judgment that plaintiff Robert L. Stull was "seized of an indefeasible estate in fee simple absolute in and to the following described real estate * * * (lot 16). The Court doth further find, adjudge and decree that the defendants have no right, title, interest, lien, claim or estate in and to the aforesaid real estate whatsoever."

On June 26, 1952, Roger L. Stull and his wife conveyed lot 16 by warranty deed to John C. Schwarz and his wife, Anna, for the recited consideration of $1,125. Defendants Schwarz in 1947 or 1948 had purchased lots 17 and 18 which were immediately east of lot 16 for $2,150 for 58 front feet or about $37 a front foot. In 1952, the same year that he had acquired lot 16, he placed an improvement thereon. As we understand, he constructed a building, a part of which was on lots 16, 17, and 18.

On April 7, 1953, defendant Schwarz leased to defendant William Daniels the premises numbered 9850 Manchester Road, which was a divisible portion of the entire building and which part occupied all of lot 16 (east to west) and about 500 square feet of lot 17, for a term of five years with an option to renew for five years, beginning May 15, 1953, for an annual rental of $2,400. On May 8, 1953, John and Anna Schwarz conveyed lots 16, 17, and 18 to defendant Jas. W. Strouse, to secure a note evidencing a loan of $12,000 to the Schwarzes by defendant Sylvester Witte, who was the agent and straw for intervenor St. John's Community Bank, a banking corporation. That note was payable $300 a month beginning June 8, 1953, and each month thereafter for 34 months, the balance due on May 8, 1956, with interest on the unpaid balance of principal at five per cent per annum.

Amanda Johnson testified. The other plaintiff, Donald Seale Johnson, a resident of New York at trial time, was not present at the trial. Mrs. Johnson said that she had paid all the state and county taxes on lot 16 from the time of the execution of the contract of purchase through the year 1953. While there was some evidence that perhaps Mr. Stull had paid the state and county taxes in 1951 and possibly in one other year, nevertheless, Mrs. Johnson had consistently paid state and county taxes on the lot during the time from 1943 to 1953. She testified that she had no knowledge that lot 16 was in Rock Hill or that any city taxes were due on the lot; that she had no knowledge of the lot having been advertised for sale; that her first intimation that anyone other than herself and her son were claiming an interest in the lot was a letter she received from a deputy collector in St. Louis County in answer to an inquiry made by her, which letter indicated that the lot had been transferred on the county books in 1953 to Roger L. Stull. Mrs. Johnson had left St. Louis in 1935, had visited once in 1947, and said she had no knowledge that any building had been put on the lot until January 1954. She had no knowledge of the sale of the lot for taxes and, while she did not so testify directly, the clear inference is that she had no notice or knowledge of the quiet title suit filed in 1952. In her opinion, lot 16 was worth $175 per foot in 1949.

In 1949, and for years prior thereto, one A. W. Larson conducted the city and village tax office in Clayton, Missouri, which, as we understand, was Mr. Larson's private enterprise through which he collected taxes for various municipalities located in St. Louis County. He was deputy collector for certain of such cities and, as such, was authorized to take care of the details of advertising sales for back taxes, preparing certificates of purchase, collector's deeds, etc. Roger Larson, the son of A. W. Larson, testified that his father continued to operate the city and village tax office until his death in 1950, and that since that time he, Roger, had operated it; that during the time his father operated the tax office, he, Roger, was there employed as a clerk and general office manager; that he was at the sale of lot 16 and familiar with the certificate of purchase issued to the purchaser, C. E. Holt; that in January 1952 he, along with Roger Stull, obtained lot 16 from Holt; that he did not know the exact respective interests of himself and Stull because they were involved in several such purchases; that he, along with Stull, retained the attorney to bring the quiet title action after the collector's deed had been obtained in Stull's name, and that he (Larson) had followed the quiet title suit to its completion.

Defendant Roger Stull did not testify at the instant trial. His deposition disclosed that he did not attend the tax sale; that he knew that he had acquired some interest in lot 16, and that he paid Larson therefor, but did not know how much or when, or exactly what interest he acquired.

Roger Larson was a licensed real estate broker and negotiated the sale of the lot to Schwarz. Roger mentioned the lot to

Schwarz in May 1952 because he knew that Schwarz owned some adjoining lots. Schwarz, at the time he acquired lot 16, had never heard of the Johnsons, had no actual knowledge that lot 16 had been priorly sold at a tax sale or that the Johnsons or any other person claimed an interest in it. All of his discussions were with Roger Larson who he knew was a real estate broker. He did not talk with the record owner, Roger Stull. Schwarz, being a brick contractor, was in Larson's city and village tax office in connection with the construction of a proposed vault, at which time Larson asked him if he would be interested in lot 16; that while he thought the asking price of approximately $40 a front foot was high, he told Larson that if he, Schwarz, could raise the money, he would be interested. Thereafter he paid some money down with the arrangement that the balance was to be paid upon the vendor furnishing him a good title. Before the balance of the purchase price was paid, Larson furnished Schwarz a copy of a certificate of title issued by the Land Title Insurance Company of St. Louis which showed that fee simple title to lot 16 was well vested in Roger L. Stull. Schwarz did not examine the records in the St. Louis County recorder's office and had no one do so on his behalf.

Witte, who was executive vice president of intervenor bank and who acted in the deed of trust as a straw party for the bank, ordered a title search and received a certificate of title issued by the Guaranty Land Title Company prior to the time the bank made the $12,000 loan to Schwarz. That certificate, which covered lots 16, 17, and 18, showed that title was vested in John and Anna Schwarz. Witte had no personal knowledge that either Donald or Amanda Johnson claimed any interest in the lot or that lot 16 was sold for $81.92 at a tax sale, or that a collector's deed to Stull so showed on its face, and no personal knowledge of any quiet title suit or decree therein; he relied entirely on the certificate of title. The loan payments of $300 per month had been regularly made and there was $8,500 still due at trial time.

The petition in the instant case was filed on March 9, 1954. On April 2, 1954, instant plaintiffs, who, as noted, were the defendants in the quiet title suit, filed an entry of appearance and a motion to set aside the quiet title judgment in accordance with Section 527.220. (All section numbers refer to RSMo 1949, V.A.M.S.) The motions of the quiet title plaintiffs and the subsequent purchasers and mortgagees of lot 16, to dismiss the Johnsons' motion to set aside the quiet title judgment, were sustained and such motion was dismissed without prejudice on the ground that Section 527.220 was not applicable. Donald and Amanda Johnson appealed from that judgment, Stull v. Johnson, Mo., 280 S.W. 2d 71. This court there held that the trial court had correctly ruled that Section 527.220 did not apply; that the motion to set aside was not, and could not be treated as, a petition for review under Sections 511.170–511.250; and the judgment of dismissal was affirmed. This court remarked in that opinion that it appeared in that record that the instant suit in equity was pending in another division of the St. Louis County Circuit Court, and that if the bill in that case complied with the requirements of a bill of review, it could be so considered, provided that the rights of innocent purchasers would not be prejudiced thereby. Instant plaintiffs, however, instead of waiting for our decision in Stull v. Johnson, supra, for some reason, certainly not apparent, proceeded to try the equity suit while the appeal in Stull v. Johnson was pending.

Instant case was finally submitted on October 1, 1954, and this court's opinion in Stull v. Johnson, supra, was filed June 13, 1955. The trial court's decree in the instant case was not rendered, however, until September 23, 1955, and some reference was made in the trial court's memorandum to Stull v. Johnson, supra.

The matters mentioned assume some importance, as do other questions concerning the nature of the instant action, in view of the fact that present appellants understandably contend in the first instance that the final judgment in the quiet title suit is res judicata on the question of Roger Stull's title and as to the titles of those claiming under him; at least, say appellants, until that judgment has been set aside either by a petition for review under Sections 511.170–511.250, or by an equitable proceeding directly attacking the quiet title judgment on the ground of fraud in its procurement. And, appellants say, the instant suit is neither a bill for review nor a direct attack on the quiet title judgment for fraud in its procurement.

█ Because of those contentions we have made an analysis of the pleadings in the instant case. Clearly, the petition, or the petition as aided by all other pleadings, and most liberally construed, cannot justifiably be treated as a petition for review under Sections 511.170–511.250. Because of our further conclusion, however, to treat instant petition as a direct attack in equity on the quiet title judgment for fraud in its procurement, it is unnecessary to state our reasons for holding instant petition insufficient to be treated as a bill for review.

It is true, as appellants contend, that plaintiffs' original petition in the instant case completely ignored the existence of the quiet title judgment and did not ask that it be set aside. The answer and cross bill and the amended answer and cross bill of defendants Schwarz alleged that the quiet title judgment was res judicata of all issues. Plaintiffs' reply and amended reply to Schwarz' amended answer and cross bill again failed to seek direct relief against the quiet title judgment. After submission of the instant case, plaintiffs, by leave, amended their reply and alleged that at the time of the claimed service by publication on the plaintiffs as nonresidents, they were in fact residents of Missouri; that plaintiff

in the quiet title suit had notice thereof through a recorded deed; and that the order of publication was fraudulent and void and had not conferred jurisdiction over these plaintiffs. The instant transcript shows no objection to that amendment and, while it is not presently understandable why instant plaintiffs did not directly and in unmistakable language attack the quiet title judgment for fraud in its procurement rather than to rely, as they now must do, upon the drawing of, at best, tenuous inferences in order to permit us to consider their instant suit as a direct attack on the quiet title judgment for fraud in its procurement, nevertheless, under all the circumstances, we are constrained to the view that we may not confidently conclude other than that the parties to this litigation understood that the issue of the fraudulent procurement of the quiet title judgment was being litigated. And that, even though such specific relief was not sought in, but was consistent with, the pleadings. Anison v. Rice, Mo., 282 S.W.2d 497, 502 [4–6]. We, therefore, treat the instant action as a direct attack on the quiet title judgment for fraud in its procurement.

█ The initial question, then, is whether the evidence adduced was sufficient to constitute convincing evidence that fraud was committed by Stull in the procurement of his judgment in the quiet title action. For "It is well established that upon timely application equity will intervene to set aside a final judgment procured by fraud or to prevent injustice where a final judgment was the result of unavoidable accident or excusable mistake. Krashin v. Grizzard, 326 Mo. 606, 615, 31 S.W.2d 984, 987 [1]; Overton v. Overton, 327 Mo. 530, 540, 541, 37 S.W.2d 565, 567 [1], [2, 3]; Chouteau v. City of St. Louis, Mo.App., 131 S.W.2d 902, 903 [1], 904 [4, 5]." Brasker v. Cirese, Mo., 269 S.W. 2d 62, 65 [1]. It is also the law that the judgment of a court of competent jurisdiction will not be set aside because a false affidavit as to the residence of parties has been filed, unless that affidavit was fraud-

ulently made, and that the fact that it was fraudulently made must be established by convincing evidence. Wright v. Wright, 350 Mo. 325, 337, 165 S.W.2d 870, 875 [6, 7].

As we have noted, the allegations with reference to the residence of the defendants in the quiet title suit were contained in the verified petition. The evidence was that the allegations as to defendants' residence were false in that Amanda Adeline Johnson, at least (there was no evidence as to Donald Johnson's residence in 1952), was at the time of the filing of that suit and had been for many years continuously prior thereto a resident of Kansas City. The attorney who verified the petition did not testify at the instant trial and thus did not state what his knowledge, information, and belief was on February 19, 1952, when he verified the averments of the petition as to the residences of the Johnsons. Neither did Roger Stull, the plaintiff in the quiet title suit, testify in the instant case and thus neither did he state his knowledge, information, or belief as to the residences of the Johnsons at that time. We have heretofore quoted the petition's allegations as to the residences of the Johnsons. It will be noted that those allegations show that the one who verified them could not very well have had any actual knowledge, or any belief, or any valid information concerning the Johnsons' residences or whereabouts because the affiant did not even know whether the Johnsons or either of them were living or dead, did not know whether they were nonresidents of this state or whether they were residents and had absented themselves from their usual places of abode within the state, or whether they were residents but were unknown residents and, for that reason, could not be served by ordinary processes. We have also noted that the recorded warranty deed of March 3, 1943, conveying title to plaintiffs as joint tenants, of which Stull had constructive, if not actual notice, showed their residences as Jackson County, Missouri.

██ The fact, standing alone, that an affidavit to the best of affiant's knowledge, information, and belief, as to the residences of parties, made for the purpose of procuring an order of publication, is untrue, is insufficient to show that such affidavit was fraudulently made and insufficient to show that the affiant knew that the facts alleged were untrue. Nieman v. Nieman, Mo.App., 127 S.W.2d 34, 36 [1–3]. But the fact that such verified allegations were untrue, the fact that the allegations made showed affiant's lack of knowledge, information, or belief, the facts that affiant did not testify and his absence was not accounted for, and the fact that the plaintiff in the quiet title suit (a defendant in the instant case) did not testify or supply any evidence or explanation as to his knowledge, information, or belief as to the Johnsons' residences in February 1949, all added to the further fact that Stull had constructive knowledge through the recorded deed of March 3, 1943, that plaintiffs then lived in Missouri, constitute convincing evidence that the one who verified the quiet title petition and obtained the order of publication based thereon did not have a reasonable ground to believe that either or both Amanda and Donald Johnson could not be served with regular process in the State of Missouri. And while it is probable that affiant verified the petition in the quiet title suit as a routine matter in compliance with the matters set forth in Section 506.160 dealing with service by mail or publication, and while it is probable that affiant had no actual intention to cause a resident of the state to fail to receive a notice he was entitled to receive, nevertheless, we hold that such action amounted to a constructive fraud and that the quiet title judgment was, therefore, procured by fraud and should be set aside.

██ Once the quiet title judgment has been set aside, the collector's deed to Stull conveying to him lot 16, worth at least $1,200 in 1949 and sold for $81.64, should be cancelled. That is because the consid-

eration for lot 16 was so grossly inadequate as to shock the conscience and to justify the cancellation of the collector's deed on the ground of fraud. Schaeffer v. Moore, Mo., 262 S.W.2d 854, 861.

■ The question remains however, as to whether defendants Schwarz were bona fide purchasers of lot 16. The evidence and the reasonable inferences therefrom justify the conclusions that the witness Roger Larson as an employee in his father's tax office had available information which would enable him to make advantageous purchases of properties which, from time to time, were being sold for taxes; that he and defendant Roger Stull had some sort of an arrangement whereby each contributed money and each had a stated interest in properties acquired at tax sales; that Roger Larson and Stull took the title to lot 16 in the name of Stull; and that they thereafter jointly engaged attorneys to bring a suit to quiet title to lot 16.

The trial court found that defendant Schwarz had the same knowledge as to the manner in which Stull acquired his tax title and as to the subsequent quiet title suit filed and concluded, as did Larson and Stull. We cannot, however, find evidence in the record which enables us to reach the conclusion that Schwarz had actual knowledge of any fact which would cause him to believe that Stull did not have title as shown by the certificate of title. It is true that Schwarz dealt entirely with Roger Larson and never with Stull, the record owner of the property; but it is also true that Larson was a licensed real estate broker and that Schwarz so knew. No reason appears to doubt Larson's testimony that he knew that Schwarz owned lots 17 and 18, the two lots immediately east of lot 16, or to doubt Schwarz' testimony that Larson mentioned lot 16 when Schwarz was in Larson's office in connection with the construction of a brick vault for Larson. It is also true that the negotiations between Larson and Schwarz apparently went on shortly before and during the pendency of the suit to quiet title, and that the deed from Stull to Schwarz was executed and delivered just 11 days after the quiet title judgment had become final in the trial court. But that and the other matters we have mentioned are significant only if Schwarz' knowledge be first assumed. None of them, singly or together, is sufficient to permit a reasonable inference that Schwarz had actual knowledge of, or was in some manner a party to, some sort of scheme by Stull and Larson to obtain lot 16 by having paid therefor an inadequate consideration at a tax sale and by thereafter attempting to perfect title through a quiet title suit in which one of the owners was not served with process by reason of a constructively fraudulent affidavit as to her residence. We conclude, therefore, that the evidence fails to show that Schwarz had any actual knowledge that Stull did not hold fee simple title to lot 16 as the certificate of title which Schwarz relied on said he did.

■ Defendants Schwarz had constructive notice, however, of the contents of prior recorded instruments in his vendor's chain of title. Brown v. Evans, Mo., 182 S.W.2d 580, 581. Even so, the question under the facts of this case is whether a reasonably prudent man would be justified in relying completely upon the quiet title judgment; a judgment valid on its face, and by which the circuit court, a court of general jurisdiction, had adjudged that Roger Stull, Schwarz' grantor, was seized of an indefeasible estate in fee simple absolute in and to lot 16. Defendants Schwarz suggest that the question is one of first impression in this state. We have found and have been cited to no other comparable case wherein the conveyance by the successful party in the quiet title action was by warranty deed.

In McAboy v. Packer, 353 Mo. 1219, 187 S.W.2d 207, one Johnson purchased property at a tax sale for $79.05 and thereafter brought suit to quiet title against the former owners, McAboy and Mrs. Morgan.

The defendants sought to cancel Johnson's tax deed on the ground that it was void due to gross inadequacy of consideration. On May 22 the trial court quieted title in Johnson. On May 24 defendants McAboy and Morgan appealed to this court. On January 13 that appeal was dismissed for failure to comply with the rules. Packer wanted to buy the property involved. He had discussed the matter with Johnson's lawyer who told him the land could not be sold until the title was quieted. Packer agreed to buy the land when that happened, and, after the dismissal of the appeal, Packer was notified that title had been quieted in Johnson. Packer then paid or agreed to pay the balance of the purchase price. On April 29, 1942, McAboy and Morgan sued out a writ of error in the quiet title case and thereafter the judgment in that case adjudicating title in Johnson was reversed and title to the land was quieted in McAboy and Morgan.

This court construed the deed from Johnson to Packer as a special warranty deed under which the grantee was in the same position as a grantee in a quitclaim deed and therefore took title subject to and with notice of prior outstanding equities and claims even though unrecorded. Apparently, to demonstrate the presence of a circumstance which indicated that the grantee had constructive notice in any event, the court pointed out that Packer was bound to take notice that Johnson's title was subject to being defeated (under the law as it then was) in the event of a successful prosecution of a writ of error within one year after the entry of the original judgment. (The writer, apparently, attached some significance to the fact that Packer's deed was of the same standing as a quitclaim deed. We think that was of no importance on the question of Packer's constructive notice.)

We have the view, under the facts of instant case, that defendants Schwarz were not bona fide purchasers. A bona fide purchaser is one who pays a valuable consideration, has no notice of outstanding rights of others, and who acts in good faith. Allaben v. Shelbourne, 357 Mo. 1205, 1212 [3], 212 S.W.2d 719, 723 [5, 6]. The necessary notice referred to may be imparted to a prospective purchaser by actual or constructive notice of facts which would place a reasonably prudent person upon inquiry as to the title he is about to purchase. Lee & Boutell Co. v. C. A. Brockett Cement Co., 341 Mo. 95, 116, 117, 106 S.W.2d 451, 460. Now, as we have said, Schwarz had constructive notice of everything the instruments on file showed with respect to his chain of title. There is no evidence as to what the records showed with reference to the quiet title judgment. If there was some record referring to that judgment, or if Schwarz knew of such judgment in any other way, then an examination of the court records leading up to the rendition of that judgment would have disclosed that it was a default judgment granted on service by publication after the verification of the allegations contained in paragraph 6 of the petition heretofore set forth. Schwarz was bound to take notice of the provisions of Sections 511.170–511.250 for the review of default judgments within three years after their entry and to further take notice that Stull's title was subject to being so defeated. With such notice a reasonably prudent person should have thereupon examined the record instruments to determine the source of the title asserted by Stull in the quiet title suit. And if the records in the recorder's office disclosed nothing with respect to the quiet title judgment and if Schwarz had no other actual or constructive knowledge of the quiet title judgment, then an examination of the deeds on file would have disclosed that Stull was relying on or had relied on a collector's deed issued pursuant to the sale of lot 16 in August of 1949 for the amount of Rock Hill city taxes due for the years 1937–1947, inclusive, and for the total sum of $81.92. And Schwarz knew that in 1948, one year prior to the tax sale, he had purchased lots 17 and 18 immediately east of lot 16 for a price of about $37 a front foot. Schwarz, therefore,

would have known that lot 16 had been sold for a consideration so grossly inadequate as to, in law, amount to fraud and to call for the cancellation of Stull's deed.

 Certain appellants contend that plaintiffs were guilty of laches barring any relief in their present action. The argument is that Schwarz acquired his title in June 1952 and shortly thereafter began to erect improvements; that the appearance of the improvements was notice to the world that Schwarz claimed the property; and that by waiting until March 1954 to institute the instant action plaintiffs were guilty of laches. That contention is without merit in view of the facts heretofore set forth and in view of our holding that defendants Schwarz were not bona fide purchasers.

As heretofore noted, defendant Schwarz had erected a building across lots 16, 17, and 18. Defendants Schwarz sought below and here seek to recover the value of the portion of the building on lot 16. The trial court not only denied any such relief but entered a money judgment in favor of plaintiffs against the Schwarzes representing the amount in which plaintiffs had been damaged by the use of their property based upon rent paid by the lessee. Plaintiffs here contend that because defendants Schwarz were not bona fide purchasers they cannot recover the reasonable value of improvements.

 We are of the view that defendants Schwarz are entitled to recover the reasonable value of the improvements made by them to the extent that such improvements enhanced the value of lot 16 at trial time. It does not necessarily follow that because defendants Schwarz were not bona fide purchasers they were guilty of bad faith in placing the building on lot 16. The Schwarzes were not guilty of bad faith barring their recovery for improvements, unless they had actual notice of an outstanding better title when the improvements were made. Martin v. McCabe, 358

Mo. 118, 126, 213 S.W.2d 497, 501 [2, 3]. True, the case last cited also holds that the party making the improvements may be charged with *actual* notice of another's better title if he *knew* facts which, if inquired into, would have led to such actual notice. In the instant case the Schwarzes, when they made the improvements, had no actual knowledge of plaintiffs' outstanding title. They had relied upon a certificate of title which showed fee simple title in Stull, their grantor. And there is no evidence that they had actual knowledge or notice of facts which, if inquired into, would have resulted in actual notice of a claim by another of better title. The only fact actually known to them was that the certificate of title showed that they had obtained fee simple title from Stull. Such fact, far from putting them on inquiry, would have had exactly the opposite effect.

True, the recorded instruments affecting the title constituted constructive notice and such constructive notice was, we have held, sufficient to prevent the Schwarzes from being bona fide purchasers. But the constructive notice by reason of recordation could not, under instant facts, amount to actual notice either of the fact of another's better outstanding title or *actual* knowledge of any fact putting them on inquiry which would have led to actual notice. In short, the constructive notice chargeable to the Schwarzes did not show their bad faith in making the improvements, and the ultimate inquiry must be whether the improvements were made in good faith.

We do not construe the cases relied upon by plaintiffs as contrary to our holding herein. Lee v. Bowman, 55 Mo. 400; Staub v. Phillips, 307 Mo. 576, 271 S.W. 365; Brandon v. Stone, 237 Mo.App. 671, 162 S.W.2d 83; and Martin v. McCabe, supra, cited by plaintiffs, seem to recognize that the notice required of another's claim is actual notice which may be imparted, however, by *actual* notice of a fact or circumstance, which would place one on inquiry and which, if investigated, would

lead to actual notice. In any event, however, we are of the opinion that the equitable considerations inherent in the instant case require that defendants Schwarz be permitted to recover for improvements made.

We hold, therefore, that defendants Schwarz are entitled to recover the amount by which the value of lot 16 has been enhanced by reason of the improvements. There is not sufficient evidence here to permit this court to adjust matters between plaintiffs and defendants Schwarz and enter a final judgment. Thus, that portion of the trial court's judgment adjudging title in plaintiffs, setting aside and cancelling the collector's deed, the quiet title judgment, the warranty deed from the Stulls to the Schwarzes, the lease from Schwarz to Daniels, the deeds from Schwarz to Kramer and Kramer to Schwarz (not here involved), and the deed of trust in so far as it affects lot 16, and providing for costs, is affirmed. That part of the judgment awarding a money judgment to plaintiffs against defendants Schwarz is reversed and the case is remanded with directions to the trial court: to determine the amount by which the improvements made enhanced the property at trial time; to add thereto the amount of taxes which defendants Schwarz have paid on said property; to deduct from such total the sum which the trial court finds, after hearing thereon, was the reasonable rental value of the unimproved lot from the date when the construction of the present building was begun to the date of this judgment; and to enter the difference as a money judgment in favor of either plaintiffs or defendants Schwarz as the case may be, with interest thereon at 6 per cent per annum from the date of such judgment; and, to determine the amount of any taxes paid by defendants, other than Schwarz, and order plaintiffs to refund to such others such respective amounts with interest thereon.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.