J. C. EQUIPMENT, INC., a corporation,
Plaintiff-Appellant,

v.

SKY AVIATION, INC., et al., Defendants,

Clinton E. Chatters and Thunderbird Bank,
a corporation, Defendants-Respondents.

No. 34938.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 24, 1973.

Joseph J. Becker, Clayton, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Daniel T. Rabbitt, Jr., St. Louis, Champe Rafterey, Phoenix, Ariz., for defendants-respondents.

WEIER, Judge.

Plaintiff J. C. Equipment, Inc. appeals from the judgment rendered by the circuit court wherein defendant Clinton Chatters was held to be a good faith purchaser of an airplane and hence that he took title without actual or constructive notice of a fraud perpetrated on plaintiff in the sale of the aircraft. Contrary to the trial court's ruling, however, the burden of proof to establish his position as a bona fide purchaser was upon defendant Chatters and the defendant Thunderbird Bank who made a loan to Chatters for the purchase money. Since these defendants failed to produce any evidence to show that their transactions occurred prior to the filing of plaintiff's notice of rescission, we reverse and remand.

The plaintiff J. C. Equipment Company owned a Model 175A Cessna aircraft. Sometime about the first of October, 1969, Thomas G. Buckley, Jr., the President of plaintiff J. C. Equipment met defendant Del Pierson, the President of Sky Aviation, Inc., at a small airport in Illinois. At the time Buckley had landed the Cessna at the airport because of ignition trouble. Pierson offered and Buckley accepted a ride in Pierson's plane back to St. Louis County. During the course of the ride, Buckley discovered that Pierson was in the business of buying and selling aircraft and they discussed the purchase by J. C. Equipment Co. of an airplane owned by defendant Sky Aviation, Inc. After some negotiation, on October 8, 1969 Pierson and Buckley executed a brief memorandum type agreement whereby Sky Aviation agreed to sell J. C. Equipment a Piper PA32 airplane, more popularly known as a Cherokee-6 for the sum of $9,000.00 together with a transfer of the Cessna 175A owned by J. C. Equipment to Sky Aviation without certain electronic gear installed on the Cessna. The Cherokee was to be delivered free and clear of any encumbrances, with a new annual inspection by an official of the Federal Aviation Administration. The cost of the inspection and any work required to place the aircraft in a position where it could pass the inspection were to be paid by Pierson. Buckley gave Pierson $500.00 as earnest money at the time of the execution of the contract. Delivery was to be within

ten days. Subsequent to the execution of the contract, upon running a check of the title on the Cherokee at the Aircraft Registration Branch of the Department of Transportation in Oklahoma City, Oklahoma, Buckley determined that this aircraft was named in a security agreement to United Bank of Phoenix, Arizona to secure payment of a loan to Sky Aviation. Later, while in Buckley's office in Missouri, Pierson called some lending agencies and arranged for a commitment on a $4,500.00 loan against the Cessna which was to be used to pay down the loan he had made at United Bank so that the bank would release the Cherokee and title to that aircraft would pass free and clear to J. C. Equipment. On or about October 15, 1969, Pierson flew the Cherokee into Weiss Airport in St. Louis County and delivered it and a blank bill of sale to Buckley. Buckley at the same time executed a blank bill of sale and delivered it to Pierson so that Pierson could in turn negotiate the loan on the Cessna and clear the lien on the Cherokee. The Cessna at that time was still at the airport in Illinois where Buckley had first met Pierson. Pierson returned to Arizona without the Cessna and interested the defendant Clinton E. Chatters in its purchase in part by the use of photographs Pierson had obtained of the Cessna. About the same time Buckley, who had not been checked out to fly in the Cherokee aircraft, engaged the services of a pilot at a neighboring airport where repair facilities were maintained to fly this plane to that airport for an inspection. This inspection revealed many defects in the airplane, some of which indicated structural damage and required the plane to be grounded until they were corrected. Buckley on behalf of J. C. Equipment thereupon executed a notice of rescission of the contract directed to Sky Aviation and Del Pierson. After it was subscribed and sworn to before a Notary Public on the 16th day of October, 1969, it was mailed to the Aircraft Registration Office, Department of Transportation, at Oklahoma City, Oklahoma. The next day,

October 17th, Buckley's attorney posted a letter to Pierson as President of Sky Aviation notifying him of the discovery of the defects and requesting that no sale or encumbrance of the Cessna be made in any manner until the arrangements had been completed for repairs or a return of the Cherokee aircraft. In the meantime, Buckley still retained possession of the Cessna. On October 20, 1969, defendant Clinton E. Chatters, who had previously been negotiating a purchase of the Cessna, notified Pierson that he was ready to complete the transaction. The next day, defendant Thunderbird Bank ordered a title search of the Cessna in the Aircraft Registration Office at Oklahoma City and the title service making the search reported that as of 3:10 p. m. on October 21st the title was in J. C. Equipment, Inc. without any liens or encumbrances. On October 22, 1969, at 10:09 a. m. central standard time the notice of rescission previously executed by J. C. Equipment was received at the Aircraft Registration Office in Oklahoma City and filed. Sometime on that same day Pierson negotiated the sale on the Cessna aircraft to Chatters at the Thunderbird Bank in Arizona. The bill of sale previously executed by Buckley was delivered to Chatters and the bank in turn received a chattel security agreement from Chatters on the aircraft to secure an indebtedness of $4,263.26. The bill of sale naming Chatters as the purchaser and the security agreement were both forwarded to the Registration Aircraft Office at Oklahoma City where both instruments were filed October 24th, 1969. All instruments including the notice of rescission were thereafter recorded at that office on October 30, 1969. Although the sale of the Cessna aircraft had been negotiated in Arizona on October 22, 1969, the plane itself was still in Buckley's possession at Weiss Airport in St. Louis County, Missouri. Sometime on October 24 or 25, 1969, it was removed from the airport by someone unknown to Buckley and was flown to Arizona where Chatters received possession of it on October 27, 1969.

Suit was first filed by J. C. Equipment, Inc. against Sky Aviation, Inc. and Del Pierson on October 24, 1969 in the circuit court of St. Louis County. Thereafter on December 12, 1969, an amended petition was filed including as additional defendants Clinton E. Chatters and Thunderbird Bank. Although Sky Aviation and Del Pierson filed answers they did not appear at the time of trial, either in person or by attorney. Judgment was rendered by the court against Sky Aviation, Inc. and Del Pierson in the sum of $6,500.00 and in favor of the defendants Chatters and Thunderbird Bank. In is conclusions of law, the court determined that Congress had pre-empted the field of registering and recording title documents to aircraft, but that under 49 U.S.C.A. § 1403, the notice of rescission of J. C. Equipment, Inc. was not effective as constructive notice until it was actually recorded at the Aircraft Registration Office in Oklahoma City on October 30, 1969 at 8:26 a. m. The court further concluded that even if the notice of rescission constituted constructive notice as of October 22, 1969, the day that it was filed, Chatters' purchase of the airplane along with his execution of the security agreement to the bank took place on the same day. Further, the court declared there was no evidence as to which took place first and since the burden of proof in that regard was on the plaintiff, the defendants Chatters and Thunderbird Bank must prevail. Plaintiff on appeal contends that the trial court erred in its conclusion that the effective time for providing constructive notice of the rescission was the date of recording at the Aircraft Registration Office rather than the time when the notice of rescission was filed in that office at 10:09 a. m. central standard time on October 22, 1969. And further that since the transaction occurred in Arizona on that same day, the defendants Chatters and Thunderbird Bank had the burden of proving that Chatters took as a bona fide purchaser on that date, particularly since this was a matter peculiarly within their knowledge.

■ Since the Cessna was located in Missouri at the time of the transaction with defendants Chatters and Thunderbird Bank, Missouri law is applicable. Restatement, Second, Conflict of Laws § 248. Our courts have defined a bona fide purchaser to be one who pays a valuable consideration, has no notice of outstanding rights of others and who acts in good faith. The necessary notice referred to may be imparted to a prospective purchaser by actual or constructive notice of facts which would place a reasonably prudent person upon inquiry as to the title he is about to purchase. A prospective purchaser has constructive notice of everything the instruments on file show with respect to the chain of title. Johnson v. Stull, 303 S.W.2d 110, 118 (Mo. 1957). Likewise our Uniform Commercial Code, § 400.1–201(9), RSMo 1969, V.A. M.S., in defining "Buyer in ordinary course of business" sets out the requirements that he must be "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind * * *."

■ In their answers, defendants Chatters and Thunderbird Bank have each attempted to place Chatters in a position of being a good faith purchaser by alleging that Chatters purchased the aircraft from Sky Aviation by paying a valuable consideration without any knowledge or notice, actual or constructive, that the airplane was acquired from plaintiff by deceit and misrepresentation. Defendants here have thus properly pleaded in their answer the affirmative defense of good faith purchaser. Rule 55.10, V.A.M.R. And where fraud in the original transfer is shown, a subsequent purchaser has the burden of proving that he is an innocent purchaser for value without notice or knowledge of the fraud. Parish v. Casner, 282 S.W. 392, 412 [13] (Mo. 1926); Mathews v. O'Donnell, 289 Mo. 235, 233 S.W. 451, 459 [9] (1921).

Here plaintiffs proved fraud and deceit on the part of Sky Aviation and Pierson. Plaintiff also proved that it had filed its notice of rescission of the contract with defendants Sky Aviation and Pierson on October 22, 1969, at 10:09 a. m. central standard time. The defendants Chatters and Thunderbird Bank contend, and the trial court agreed with them, that the time of recordation on October 30, 1969 was the effective time as to constructive notice under 49 U.S.C.A. § 1403. We cannot agree with this contention. The clear and unambiguous wording of the statute is irreconcilable with such a conclusion. 49 U.S.C.A. § 1403(d) states: "Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation, * * *." As stated in Kerley Chemical Corp. v. Colboch, 145 Cal.App.2d 509, 302 P.2d 621, 623 (1956): "The Federal statute [§ 1403] contemplates a delay between filing such a document for recordation * * * and the actual recordation thereof. * * * Apparently it was because such a delay was to be expected, * * * that the statute specifically provided that the instrument should be valid from 'the time of its filing for recordation'." By 49 U.S.C.A. §§ 1403 and 1406 Congress has pre-empted the field of registering and recording title documents to aircraft, leaving questions of the validity of title documents, actual notice, good faith purchaser status and the like to be resolved under state law. State Securities Co. v. Aviation Enterprises, Inc., 355 F.2d 225, 229, 10th Cir. (1966).

Because the filing time is the effective time of constructive notice to Chatters and Thunderbird Bank that there had been a failure on the part of Sky Aviation and Del Pierson to comply with the terms of the sales contract, it was incumbent upon those defendants to prove that they were without notice of those facts at the time that the transaction occurred in Phoenix, Arizona. Since the notice was filed in Oklahoma City at 10:09 a. m. central standard time, the corresponding time in Phoenix, Arizona, on October 22, 1969, would have been 8:09 a. m.[1] It would therefore be necessary that defendants Chatters and Thunderbird Bank prove their transaction occurred prior to the filing of the notice of rescission, that is, 8:09 a. m. This they failed to do. And since the court in its conclusions of law erred in its determination with regard to the effective time of constructive notice as being the time of recording rather than the time of filing as set out in the federal statute, and further erred in declaring that plaintiff rather than defendants Chatters and Thunderbird Bank had the burden of establishing the position of Chatters as a good faith purchaser as to notice, we reverse the judgment favoring those defendants. We remand with instructions that the case be reopened specifically for the purpose of taking additional evidence, if defendants Chatters and Thunderbird Bank so desire, concerning the time that the transaction occurred at the Thunderbird Bank in Phoenix, Arizona when Chatters obtained title to the Cessna airplane and the security agreement was executed and delivered to the bank. In the event that the time disclosed by the evidence establishes that the transaction occurred after such filing, then Chatters is not in the position of being a good faith purchaser of the aircraft and his rights and the lien of Thunderbird Bank are subject to the adjudicated rights of plaintiff. 49 U.S. C.A. § 1403(d). In the event that the

1. On the date in question, the standard Oklahoma time was advanced one hour since daylight saving time was in effect, 15 U.S.C.A. § 260a (Supp.1973). Arizona, on the other hand, was not on daylight saving time, having elected in 1968 to exempt itself from the federal act, as provided by § 260(a). Ariz.Rev.Stat. Ann. § 1-242. (West Supp.1972). Consequently, Arizona time on October 22, 1969 was two hours behind that of Oklahoma. It was, therefore, 8:09 a. m. in Phoenix, Arizona when it was 10:09 a. m. in Oklahoma City.

issues be found in favor of the plaintiff, the security agreement given Thunderbird Bank shall be adjudged null and void. Judgment shall be entered in favor of plaintiff and against defendant Chatters for the reasonable value of the aircraft, unless defendant Chatters, within a reasonable time, to be set by the court, not to exceed fifteen days after judgment, shall produce the airplane and deliver it to plaintiff, together with valid title documents, in as good condition as it was when delivered to Chatters. Appropriate injunctive relief may be granted as prayed in plaintiff's petition. Production and delivery of the airplane together with payment of costs shall satisfy the judgment as to defendant Chatters up to the depreciated value of the aircraft at time of delivery (the rate of depreciation to be determined by the court) and the amount thereof credited on the judgment against defendants Sky Aviation and Pierson, otherwise the judgments shall remain in full force and effect. Although the plaintiff sought rescission of the contract, it also prayed for general relief. In Missouri, the law requiring an election be made to sue for damages or to rescind has been changed by § 400.2–721, RSMo 1969, V.A.M.S., which authorizes: "Remedies for material misrepresentation or fraud include all remedies available under this article for nonfraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy." Even though this is a case in equity, where the prayer seeks general relief, a money judgment may be granted. Bowers v. Spinaio, 421 S.W.2d 790, 794 [7, 8] (Mo. App.1967); McDown v. Wilson, 426 S.W. 2d 112, 118 [4] (Mo.App.1968).

In the event the court determines from the evidence that the transaction with Chatters and the Thunderbird Bank occurred prior to 10:09 a. m. central standard time, October 22, 1969 (8:09 a. m. in Arizona), then judgment should be rendered in favor of those defendants. Plaintiff contended in its brief and will probably contend on retrial, that title to the Cessna did not pass on that date even though Chatters and Thunderbird Bank had no notice of the infirmities of the transaction with Pierson and Ski Aviation because there was no delivery of the aircraft to Pierson at that time. It was not until about October 27, 1969 that Chatters actually received possession. This contention is based upon the theory that title to a chattel passes only when the chattel is delivered under the Uniform Commercial Code. § 400.2–401(2), RSMo 1969, V.A. M.S. [Arizona R.S. § 44–2346, subsec. 2] reads in part: "(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, * ' * * even though a document of title is to be delivered at a different time or place; * * *

"(b) if the contract requires delivery at destination, title passes on tender there." However, plaintiff has overlooked other provisions of the Code which state: " * * title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties" [§ 400.- 2–401(1), RSMo 1969, V.A.M.S.; Ariz. R.S. 44–2346, sub. sec. 1]; and "A person with voidable title has power to transfer a good title to a good faith purchaser for value" [§ 400.2–403(1), RSMo 1969, V.A. M.S.; Ariz.R.S. 44–2348, subsec. 1].

At the time the contract was executed, Pierson received a bill of sale executed by plaintiff. It is true the evidence indicated this instrument was to be used by Pierson to obtain money or credit to release the Cherokee from the lien of a security agreement, but by placing the bill of sale in the hands of Pierson, plaintiff placed him in a position where he could pass title to a good faith purchaser. Where an owner, by his voluntary act, confers upon another the apparent right of ownership and disposal of his property, that person, even though guilty of fraud and deceit, may pass

good title to a good faith purchaser. § 400.2–403(1), RSMo 1969, V.A.M.S., *supra*; Schrader v. Westport Ave. Bank, 236 Mo. App. 362, 156 S.W.2d 753, 756 [2] (1941).

There was no appeal from the judgment in favor of plaintiff and against Sky Aviation, Inc. and Del Pierson. As to that portion of the judgment, no change has been requested and none is directed.

DOWD, C. J., and McMILLIAN, J., concur.