**William D. TONEY, Plaintiff-Appellant,**

v.

**Gary LAMBARTH et al., etc., Defendants-Respondents.**

**No. 35374.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Sept. 10, 1974.

GUNN, Judge.

This appeal is about a pretty little filly named Miss Margene 31, bearing, quite naturally, the sobriquet "Margie." Her color was grulla and her disposition easy. Margie was a fine show lady and a frequent winner of horse show prizes. Margie was definitely not an old gray mare. But, alas, neither was she what she used to be, or better said, what she was supposed to be—at least not according to plaintiff, Margie's veterinarian, nor the terms of the contract between plaintiffs and defendants for her sale.

The prologue completed, we delve into the facts. Plaintiff-appellant wanted a horse for his 16 year old daughter. The horse he was looking for had to have a nice disposition and be suitable for horse shows, trail riding, and barrel racing. Defendants-respondents, who were partners in a stable and horse trading business, were referred to plaintiff for his needs, and plaintiff went to them. Defendants showed Margie to plaintiff and assured him that Margie possessed all the requisites he was looking for in a horse for his daughter. Plaintiff was impressed but specifically inquired as to Margie's overall physical condition and particularly expressed concern about Margie's right eye which appeared somewhat unusual. Defendants assured plaintiff that Margie was fit but agreed that if, after plaintiff's purchase, a veterinarian found Margie unsound, plaintiff would be refunded his money. Plaintiff and defendants then entered into a written contract for Margie's purchase for $1,000, with $600 down payment and $400 to be paid within 60 days of the date of contract. The contract specifically provided:

"This purchase contingent upon examination by a veterinarian of my [plaintiff's] choice and that such Dr. declare the mare above [Margie] to be sound."

Plaintiff had Margie examined by defendant's own licensed veterinarian, Dr.

Jack F. Allen, Clayton, for plaintiff-appellant.

Keith W. Hazelwood, Clayton, for defendants-respondents.

Gerald D. Schrater, who gave the following written report on Margie:

"In re; Soundness examination-Quarter Horse, Margene 31, Registry #273710.

Dear Mr. Toney,

At your request I have conducted a series of examinations on the above animal, initially on Feb. 15, 71. I conducted further examinations on Feb. 28, 71. My final examination was conducted Mar. 15, 71.

It is my professional opinion that the above described mare is unsound because of blindness in her right eye.

Very truly yours,

(signed)      Gerald Schrater, D.V.M."

After Dr. Schrater's report, plaintiff sought return of his $600 plus $90 boarding fees paid, but defendants refused the refund although keeping Margie. Suit for the return of the $600 advance plus the $90 boarding fees followed.

In the trial without jury, plaintiff testified, and Dr. Schrater's deposition was read into the record. Dr. Schrater stated that he had given Margie a thorough examination and concluded that she was completely blind in her right eye, such blindness having been of long duration, possibly occurring at birth. Defendants did not appear at the trial, but a drain oil hauler, holding out as being in the horse business, testified for defendants and ventured an opinion that Margie was not blind.

In its conclusions of law, the trial court found that Margie was sound; that plaintiff, therefore, had no legal right to repudiate the contract of purchase. The court further found that since defendants had retained Margie for a period of 22 days after plaintiff had requested return of his money, plaintiff was entitled to a refund of boarding fees of $31.94 plus interest.

The trial judge bottomed his decision on the answer given by Dr. Schrater in re-

sponse to a question asked him concerning a soundness examination. Dr. Schrater testified:

"A A soundness examination consists of a physical examination to determine the health and physical condition of the horse for purchase; see if she is healthy, and the word in the horse world we use is 'sound.' Is she functional for the purposes intended."

■ The trial judge was also persuaded by defendant's sole witness who testified that Margie had won many prizes and "was either Grand or Reserve Champion pleasure horse, if I am not mistaken." The trial judge concluded, by reason of the veterinarian's statement in his deposition and the statement of defendant's witness, that Margie was functional for the purposes intended and was therefore sound within the meaning of the purchase agreement. The trial court's ruling was error in this regard. The terms of the contract specifically recited that a veterinarian must declare Margie to be sound. Dr. Schrater, a veterinarian, specifically certified Margie to be unsound. The language of the contract was clear and unambiguous, and there was absolutely no need for construction or interpretation of the contract or extrinsic evidence. In Willman v. Beheler, 499 S.W.2d 770 (Mo.1973) our Supreme Court said, l. c. 774:

"If the terms of a contract are clear and unambiguous the contract will be enforced or given effect in accordance with its terms, and without resort to construction to determine the intention of the parties. (citation omitted) In such case the construction of the parties, if at variance with the written terms, will not be followed, (citation omitted) but the contract will be construed as written. (citation omitted) 'When the language of a contract is plain, there can be no construction because there is nothing to construe.' "

The contract is clearly conditioned on a statement of soundness by a veterinarian of plaintiff's choice. The only relevant fact is whether the veterinarian declared Margie to be sound. He did not; the condition was not met and plaintiff's contractual duties were discharged. There was no need to look further than the contract and the veterinarian's certificate finding Margie unsound. Plaintiffs are entitled to the return of the $600 paid as down payment on Margie. Berger v. McBride & Sons Builders, Inc., 447 S.W.2d 18 (Mo.App. 1969).

Plaintiff is also entitled to the refund of the $90 advanced for Margie's boarding fees. The evidence was that defendants continued to hold and use Margie for their own personal purposes at all times. Defendants were, therefore, not entitled to the boarding fees.

■ There is a final point which needs attention to complete the vignette of Margie, the one eyed horse. Plaintiff's petition was in two counts; the first, for rescission of contract; the second, for damages by reason of fraudulent misrepresentation. Under § 400.2–721, RSMo 1969, V.A.M.S., recovery of damages for fraud is not barred where a party also seeks to rescind a contract. The two theories are no longer inconsistent. J. C. Equipment, Inc. v. Sky Aviation, Inc., 498 S.W.2d 73, 78 (Mo.App.1973). But, on the record before us, we cannot find sufficient evidence to support a recovery for plaintiff on his count of fraudulent misrepresentation, nor has plaintiff pursued that theory. Plaintiff may not, therefore, recover on his count in fraud.

The judgment is reversed and the cause remanded with instructions to enter judgment for plaintiff for $690 in accordance with this opinion.

SMITH, P. J., and CLEMENS and McMILLIAN, JJ., concur.