**BRANSON HILLS ASSOCIATES, L.P., and Croston/Everett Development Corporation, General Partner, Plaintiffs–Respondents,**

v.

**JISTA, INCORPORATED, Defendant–Appellant.**

No. 19180.

Missouri Court of Appeals, Southern District, Division One.

March 28, 1995.

John E. Price, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendant-appellant.

Robert W. Stillings, Springfield, for plaintiffs-respondents.

PER CURIAM:

Insofar as we have been able to determine, this is the first appellate case construing § 443.055, RSMo, a statute enacted in 1981 and amended in 1991. It was further amended in 1992, but the parties agree that the 1992 amendments were not in effect at the time the deed of trust in issue was recorded and that the 1991 version governs. This statute defines the rights and duties of parties to deeds of trust securing future advances. Counsel advise us that they have been unable to find comparable statutes or helpful authorities from other states. The trial court entered summary judgment in favor of the respondents, Branson Hills Associates and others, on Counts I and II of their amended petition, directing appellant JISTA to enter a full release of such a deed of trust on payment of $80,000. The court made the appropriate findings of finality in accordance with Rule 74.01(b), and JISTA appeals. We reverse and remand, concluding that it cannot be said with certainty that no more than $80,000 is secured by the deed of trust, and that trial is necessary. We must first consider two preliminary matters.

## 1. *Preliminary Matters*

■ The respondents moved to dismiss the appeal, pointing out that JISTA has already executed the release ordered by the trial court, and arguing that the case is moot. They no longer press this motion and, indeed, now ask us to overrule it. Inasmuch as the point is jurisdictional, however, we are obliged to notice it, and find that the case is not moot. An appealed case is not moot simply because the judgment is not stayed, but rather is complied with. If there is a reversal the trial court may enter appropriate restitutionary orders. *De Mayo v. Lyons,* 360 Mo. 512, 228 S.W.2d 691 (1950). The details of any such order are not appropriate for consideration on this appeal, but rather are matters for the trial court to address on remand.

■ The respondents also moved to strike a transcript of a hearing in the trial court on March 24, 1993, on a request for preliminary mandatory injunction on certain counts of their initial petition, now superseded by their first amended petition, citing cases holding that neither the trial court nor the appellate court should be obliged to search the record on a motion for summary judgment, and that appellate review is confined to the items brought to the attention of the trial court in the motion proceedings. The hearing in question, however, was held before the same judge who entered the judgment appealed from, and he expressly directed that the testimony there heard be received as evidence in the trial of the merits. The transcript on appeal was filed in this court at the initial suggestion of the respondents, and has been cited in the briefs. Under these circumstances, it is proper for us to resort to it. The transcript seems to add nothing of substance to the affidavits and other documents adduced in support of and in opposition to the motion for summary judgment, but perhaps makes it easier for us to understand the respective claims. We are convinced that our ruling would be the same, with or without this transcript. Rule 74.04 was amended effective January 1, 1994, which was after the motion for summary judgment was filed. The amended rule requires parties to be explicit as to what the court is asked to consider in ruling a motion for summary judgment, and the attention of the bar is directed to the amended rule. For the reasons stated, however, the motion to strike the transcript from the record on appeal is overruled.

## 2. *The Factual Setting*

■ We consider the facts in the light most favorable to the party opposing the motion. We state only the facts necessary to the decision of this case.

The appellant JISTA, Incorporated, is a Missouri corporation engaged in construction activities. The respondents, Branson Hills Associates, L.P. (BHA) and others, own land in Taney County, Missouri. The parties entered into a series of contracts, the first dated June 30, 1992, looking to the development of the respondents' land. On July 31, 1992, BHA executed in favor of JISTA a "Universally Subordinated Deed of Trust by a Limited Partnership Securing Future Advances," which was duly recorded. This instrument by its terms secures "evidence of indebtedness (all of which hereafter referred to as 'Note') now or hereafter by Grantor which on their face contain a statement that they are secured hereby." There follows, in capital letters, "THIS DEED OF TRUST SECURES FUTURE ADVANCES AND ALSO SECURES OTHER FUTURE OBLIGATIONS OF GRANTOR TO LENDER WHICH ARE CONTRACTUAL IN NATURE."

On September 18, 1992, the parties entered into a modification contract which allowed JISTA a "mobilization fee" of $150,000, "to be paid in cash upon issuance of Notice to Proceed. Said amount shall come out of release fees." A notice to proceed was issued on November 2, 1992. BHA then executed two promissory notes in favor of JISTA, dated November 13, 1992. Each recited that it was secured by deed of trust. One note was in the amount of $60,723 and the other was for $155,700. The "mobilization fee" was not paid in cash. The larger note stated just before the signatures as follows: "Payment in full [of] mobilization fee per Modification to Master Infrastructure Contract & Job Contract 2." JISTA answered in response to an interrogatory that the $155,-700 note was not accepted, but then alleged that it became secured on December 25, 1992, along with other obligations.

On December 3, 1992, seeking to take advantage of the powers conferred on borrowers under subsection 3 of § 443.055, BHA prepared a notice to JISTA reading as follows:

"[BHA] ... elects to terminate the operation of that certain 'UNIVERSALLY SUBORDINATED DEED OF TRUST BY A LIMITED PARTNERSHIP SECURING FUTURE ADVANCES,' as security for future advances or future obligations made or incurred after the date of the service of this Notice."

An affidavit accompanying the notice stated that it was delivered to Velma Jean Allmon as a representative of JISTA. It appears that Allmon was then the sole director of JISTA, but she is not an officer and is described in JISTA's affidavits as a "babysitter." Also delivered at the same time was a Notice of Default, claiming that JISTA was in default under the several contracts, and directing it to proceed no further.

On December 4, 1992, JISTA prepared and delivered to BHA its own Notice of Default, asserting that BHA was the defaulting party. Although Subsection 7 requires a filing within ten days of the service of notice of termination, JISTA had filed no response by December 14, 1992, and on that date BHA, in accordance with the authority conferred by the statute, filed in the office of the Recorder of Deeds of Taney County a document stating that "the total principal amount of all outstanding debts and obligations secured by the aforementioned Deed of Trust did not exceed Ten Thousand Dollars ($10,000.00)."

On December 28, 1992, JISTA filed and recorded a "Notice Pursuant to Section 443.055.7 RSMo.", reading in pertinent part as follows:

"BRANSON HILLS ASSOCIATES, INC., L.P. ... [BHA] has failed to send notice to lender, JISTA, INC., by certified mail, return receipt requested, or by personal delivery to an authorized agent of JISTA, INC., a Missouri corporation, and has thereby failed to satisfy the notice requirements set forth in Section 443.055.7, RSMo.

On December 14, 1992, BHA's notice which was filed in the Recorder of Deeds' office was untimely and not made in good faith. Furthermore, the current total principal amount of all outstanding debts and obligations secured by the aforementioned Deed of Trust are approximately Eighty thousand dollars ($80,000). In addition, prior to December 3, 1992, BRANSON HILLS ASSOCIATES issued to JIS-

TA, INC., additional note(s) secured by said Deed of Trust in the approximate amount of One Hundred Fifty Thousand Dollars ($150,000). BRANSON HILLS ASSOCIATES contends that said note(s) is secured by said Deed of Trust. Furthermore, BRANSON HILLS ASSOCIATES' obligations to JISTA, INC., are incurred to enable the completion of contemplated improvements pursuant to Section 443.055.3 RSMo.

Therefore, pursuant to said Statute, the lender, (JISTA, INC.) is not bound by a borrower's (BRANSON HILLS ASSOCIATES) notice or statement."

JISTA has consistently taken the position that it did not accept the note for $155,700 because the agreement called for the payment of the mobilization fee, referred to in the note, in cash, and that the tender of a note did not satisfy BHA's obligation.

Suit was then filed by BHA and its associates and an amended petition was filed by the plaintiffs in which it took the position in Counts I and II that it was entitled to a release of the future advances deed of trust on payment by it to JISTA of $80,000. The trial court entered summary judgment as sought, concluding that JISTA, by the express terms of Subsection 7, was "irrevocably bound" by its statement in the filing that "the current total principal amount of all outstanding debts and obligations secured by the aforementioned Deed of Trust are approximately ... $80,000," giving no effect to the additional language of the filing. The judge found that there was no just reason for delay in entering final judgment on Counts I and II, and judgment was entered accordingly. As has been stated, no stay was entered and JISTA executed the deed of release as ordered by the court. It now prosecutes this appeal. The other issues raised by the petition and counterclaims in the trial court remain pending.

### 3. *Notice of Termination*

■ JISTA first argues that notice of termination pursuant to § 433.055.7 was not properly served. JISTA says that the person to whom the notice was delivered was not its authorized agent, even though she was its sole director. We need not probe more deeply into this rather unusual contention, because JISTA acted on the notice by means of its filing of December 28, 1992, and therefore may be taken to have admitted that it received the notice prior to that date. In the view we take of the case we do not have to decide whether the date of December 3 is significant.

■ JISTA next argues that the notice is ineffective because the contract documents provide that it was entitled to twenty days' notice of alleged defaults, within which it could undertake to cure these defaults. It implicitly argues that all of its rights under the several contracts are secured by the deeds of trust, and that these rights are jeopardized if the borrower-landowner is allowed to terminate the several contracts for alleged default without affording the contractor the opportunity to correct defects. The respondents point out that the statute authorizes termination "at any time" without attaching conditions. This contention appears sound, but the issue is made simple of resolution because JISTA itself, on December 4, 1992, elected to declare BHA in default. It therefore was in a position to assert any rights that it had under the deed of trust for advances made or obligations incurred prior to December 3, and under the other pertinent contracts. For this reason it cannot be prejudiced by the owner's declaration of default. (We express no opinion as to the extent which JISTA may have limited itself by the filing of December 28, 1992, no matter how expansively read.)

### 4. *"Irrevocably Bound"*

Section 443.055.7 permits a borrower to serve a notice of termination of the instrument as security for future advances. The lender is then obliged, within ten days, to file in the office in which the deed of trust is recorded

"... a statement referring to the original instrument, legally describing the real property therein, setting forth the fact of its receipt of the borrower's notice, stating the date of its receipt of such notice, and stating the total principal amount as of the

date it received the borrower's notice of all outstanding debts and obligations secured by the instrument. . . . [T]he total debts so secured shall be limited in principal amount to the amount stated by the lender in its recorded notice, by which statement the lender will be *irrevocably bound. . . .*" (Emphasis supplied.)

The trial court found that JISTA was irrevocably bound by the $80,000 figure, which is its only unequivocal claim in its recorded statement. It disregarded the word, "approximately," which seems not inappropriate if the court's general conclusion is sound. The statement, however, definitely mentioned a $155,700 note, advising that BHA considers that the note is secured by the deed of trust. BHA admittedly tendered the note to JISTA to discharge its obligation to pay a mobilization fee after giving JISTA notice to proceed. JISTA took the position that the mobilization fee was to be paid in cash. The question is whether JISTA may maintain its position that it is owed cash, rather than a note, while still preserving a claim under the note in the event that the cash is not forthcoming. We conclude that it may do so.

■ The apparent purpose of Subsection 7 is to allow a borrower who does not want to continue under a deed of trust securing future advances to obtain a statement from the lender as to the indebtedness the lender deems to be secured by the instrument. The lender's statement does not bind the borrower, who may dispute the claim and may resort to litigation. But the statement places a ceiling on the lender's claims which is manifest to the borrower and to others who are concerned with the state of the record. Although JISTA played Russian Roulette by tracking the statute in setting forth the $80,000 figure and then adding additional claims, one reading the filing with the eye of a title examiner could not reasonably rely on the $80,000 figure as representing the outer limit of JISTA's claim. The statement shows clearly that a note in the amount of $155,700 is outstanding, and that the borrower considers that that note is secured by the deed of trust. The lender should not be forced to give up its claim for

cash in order to fall back on the borrower's admission that there was another note secured by the deed of trust. The policy of the statute is not served by forcing the lender to such an election. The recorded notice may have been unartfully phrased, but it is not misleading.

The last sentence of the next-to-last paragraph of the filing refers to obligations "incurred to enable the completion of contemplated improvements pursuant to Section 443.055.3." The ostensible purpose is to give notice of an additional claim of security. Because of our conclusion that the filing gave notice of the $155,700 claim, we do not have to comment on the merits of this assertion. It is not inappropriate to observe, however, that JISTA's contract did not contemplate that it would complete the improvements.

■ The respondents argue that the notice of December 28, 1992, could not effectively add to the obligations secured by the deed of trust, because of the December 3 notice, and point to JISTA's statement in answer to an interrogatory that the $155,700 note did not become so secured until December 25, 1992. Such obligation as is evidenced by the note, however, antedated the notice of December 3, 1992, and therefore was not a "future advance" or "future obligation." JISTA's filing simply set out the maker's initial intention in tendering the $155,700 note.

For the reasons stated, the trial court erred in summarily limiting JISTA to the $80,000 figure, and in requiring it to execute a release on tender of that amount.

## 5. *Late Filing?*

The respondents argue that the judgment of the trial court is correct because their notice of termination was served December 3, 1992, and JISTA's statement was not recorded until December 28, 1992. They contend that, by reason of their filing of December 14, 1992, which stated a secured amount of $10,000, JISTA, pursuant to subsection 7, is "irrevocably bound" by the $10,000 figure.

■ The respondents may properly try to demonstrate that the judgment appealed from is correct, on any ground that they deem supportive of their claim. JISTA certainly took a risk in allowing its time to run,

but respondents did not stand on the $10,000 figure. They conceded an obligation of $80,-000 in seeking a release prior to litigation of all issues. Equity precludes their arguing that a lesser amount is due.

█ The lender is irrevocably bound by the borrower's figure only if the borrower acts in "good faith." Good faith, under this record, is a factual issue. The borrower admitted to the execution of two notes expressly stating that they are secured by the deed of trust. The trial judge, in the view he took of the case, had no occasion to determine whether the assertion of $10,000 indebtedness in BHA's recorded statement was made in good faith. The respondents suggest that the issue of good faith is affirmative matter which must be pleaded as a defense. We believe that the notice given in the December 28 filing was sufficient to put the matter in issue. The pleadings may be amended on remand if the parties deem amendment desirable.

### CONCLUSION

Myriad problems lurk in determining what amounts are actually secured by the future advances deed of trust, and in evaluating priorities as to interests which may have intervened following the recording of the deed of release which we find to have been improvidently directed. These problems should be addressed by the trial court, which is fully possessed of its equitable authority in fashioning remedies. We make no determination as to the advances secured by the deed of trust, and indeed do not determine whether any amount is so secured, as against the defenses pleaded and other proper defenses which might be asserted. The respondents may persuade the trier of the fact that nothing is owed. We simply conclude, for the reasons assigned, that the partial summary judgment was inappropriate.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

All concur.