**CITY OF BRANSON, Missouri, Plaintiff/Respondent**

v.

**BRANSON HILLS MASTER ASSOCIATION, INC., and Grant General Contractors, Inc., Defendants/Co-Respondents**

**and**

**Jista, Inc., Defendant/Appellant.**

**No. SD 29577.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 5, 2009.

See also, 932 S.W.2d 406.

John E. Price, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, MO, for Appellant.

Joseph A. Bohrer, Mark C. Fels, Yates, Mauck, Bohrer, Elliff & Fels, P.C., Springfield, MO, Anthony J. Soukenik, Sandberg, Phoenix & Von Gontard, P.C., St. Louis, MO, for Respondent Grant General Contractors.

JOHN E. PARRISH, Judge.

The City of Branson, Missouri, exercised its eminent domain authority by condemning a parcel of land in Branson Hills, a development in Taney County, Missouri, owned by Grant General Contractors, Inc. (Grant). An order of condemnation was entered appointing commissioners to assess damages as prescribed by Rule 86.06. The Commissioners' Report was filed, after which exceptions were filed by the city and by JISTA, Inc. (JISTA). *See* Rule 86.08.

The amount of the commissioners' award was paid into the registry of the court. Grant, alleging its group was owner in fee simple of the property being condemned, sought distribution of the commissioners' award. JISTA claimed an

interest in the property by reason of a June 1992 contract (described as the "Master Infrastructure Contract") with Branson Hills Associates, L.P., (BHA), a prior owner of the condemned property, for work done pursuant to that contract, and thereafter filed a motion for allocation of the condemnation proceeds.[1]

The trial court, following a hearing on JISTA's motion to allocate the proceeds awarded by the commissioners, entered the following Judgment.

> NOW on this *29th* day of *Jan, 2008,* the Court having heard the evidence, and the parties having submitted their suggestions and proposed findings of fact and conclusions of law determines that the Commissioners' award paid into the registry of the court, in the amount of $4,234,340.00, plus such interest as shall have accrued thereon, is hereby awarded, apportioned and set aside to Grant General Contractors, Inc. No portion of the Commissioners' award is awarded to JISTA, Inc. The Court adopts its findings of fact and conclusions of law previously filed herein. The costs of this action are taxed against JISTA, Inc.
>
> Date: *Jan 29, 2008*
>
> /s/ *T.B. Scott*
> Theodore B. Scott, Circuit Judge

JISTA appeals. This court affirms.

### Grant's Ownership of Branson Hills Property

The property now owned by Grant was part of a real estate development under-

taken by BHA. BHA conveyed the property that is the subject of this appeal, "Parcel 12," to Wave Crest Properties, Inc., (Wave Crest), a California corporation, by warranty deed dated March 8, 1993. The deed was recorded March 16, 1993, in the Taney County, Missouri, deed records, Book 319, Pages 1486–89. Wave Crest conveyed the property to Grant by warranty deed that bears the "FILED" stamp of the Taney County Recorder's office dated November 12, 1993, and bears the certificate of the Taney County Recorder stating it was "duly filed for record" on November 19, 1993, in the Taney County, Missouri, deed records at Book 322, Pages 8369–71.

### JISTA's Involvement in Branson Hills

JISTA's claim for condemnation proceeds is based on a business relationship with BHA. Its dealings with BHA are chronicled in considerable detail in *Branson Hills Associates, L.P. v. JISTA, Inc.,* 932 S.W.2d 406 (Mo.App.1995). That opinion may be read for factual background regarding JISTA's claim that it is entitled to an apportionment of the proceeds from the condemnation action that is the basis of this appeal. Facts regarding the business relationship between BHA and JISTA recited herein are, in some instances, derived from the facts stated in that opinion without further attribution.

JISTA is in the construction business. Its involvement with BHA in the Branson

---

1. JISTA's motion for allocation alleged that its interest in the property was a security interest for debts owed. JISTA contends those interests arose as follows:

   On July 31, 1992, pursuant to the terms of the Master Infrastructure Contract, BHA issued a Universally Subordinated Deed of Trust Securing Future Advances to JISTA on 988.2 acres in the Branson Hills Development (the "JISTA Deed of Trust"), in-

   cluding Parcel 12 [which is the property subject to the condemnation action]. The JISTA Deed of Trust also referenced the contractual agreements between BHA and JISTA, specifically including the Master Infrastructure Contract. The JISTA Deed of Trust was recorded at Book 316, Pages 5342 to 5347 at the Taney County, Missouri Recorder's Office on or about August 12, 1992.

Hills development was based on a series of contracts, the first of which is dated June 30, 1992. The June 30, 1992, contract is entitled Master Infrastructure Contract. It provided that BHA would execute "a [u]niversally [s]ubordinated [d]eed of [t]rust" to secure work performed by JISTA. The contract states in its Paragraph IIC:

> (a) BHA shall execute and deliver to JISTA, before any work begins, a "DEED OF TRUST SECURING FUTURE ADVANCES" in the form specified in [an exhibit to the contract]. Said Deed of Trust shall convey a "universally subordinated" security interest in ... approximately 994 acres [described with particularity in an exhibit to the contract]. . . .
>
> . . .
>
> (d) In this context, "universally subordinated" shall mean that the Deed of Trust is automatically subordinated to any and all other Deed(s) of Trust delivered and/or filed before or after it. However, the Deed of Trust referred to in [the subparagraph (a) above quoted] shall not be subordinated to any Deed of Trust which by itself or in aggregate with other Deeds of Trust secures indebtedness in excess of $4,000,000.00 on real property subject to the Deed of Trust. This limit may be extended by mutual agreement of the parties hereto.

The contract also states:

> II. SECURITY
>
> A. The parties will establish a procedure as defined hereinbelow for the purpose of securing BHA's payment to JISTA of the charges for the work JISTA is to do.
>
> B. Deeds in escrow:
>
> (a) From time to time and *at its own discretion,* with five (5) business days' notice to JISTA, BHA *may* deliver into escrow, its Warranty Deed(s) in the form represented by [an exhibit to the contract]. JISTA shall be the Grantee. Coincidentally, BHA shall deliver to JISTA an "AFFIDAVIT OF RECORD" in the form represented by [an exhibit to the contract], and a commitment to issue title insurance by an ALTA title insurance company in an amount equal to the "credit value" specified on [an exhibit to the contract] for the Parcel as to which the Deed(s) is (are) being delivered. . . . [Emphasis added.]
>
> (b) At the time of the delivery of the above-mentioned Warranty Deed(s) into escrow by BHA, JISTA shall deliver into escrow its Quit Claim Deed(s) conveying each of the same Parcels as is (are) conveyed by the Warranty Deed(s), in the form represented by [an exhibit to the contract]. BHA shall be the Grantee.
>
> . . .
>
> (d) When any Parcel is subject to a Deeds [sic] in escrow, pursuant to this agreement, JISTA may record in the land records of Taney County, Missouri, an "AFFIDAVIT OF RECORD" in the form represented by [an exhibit to the contract], describing said Parcel(s). No other documents shall be recorded by either party evidencing any portion of this agreement, except the Universally Subordinated Deed of Trust and a Notice of Assignment under Section VI.

On November 3, 1993, the same date that Grant acquired the property in question from Wave Crest, an "Affidavit of Record" was executed on behalf of JISTA that claimed a security interest in the property that is the subject of this appeal.

It was not recorded in the Taney County, Missouri, deed records until November 19, 1993.

## Appellate Review

■ This court's review of a judgment allocating damage assessment in condemnation proceedings is governed by the standard in all bench-tried cases. *Santa Fe Trail Neighborhood Redevelopment Corp. v. W.F. Coen & Co.*, 154 S.W.3d 432, 439 (Mo.App.2005). "Under that standard, we are to sustain the action of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. We should utilize our power to set aside a judgment with caution and only upon a firm belief that it was erroneous." *State ex rel. Mo. Highway & Transp. Comm'n v. Quiko*, 923 S.W.2d 489, 493 n. 2 (Mo.App. 1996) (internal citations omitted).

## Point I

■ JISTA filed a Petition and Motion for Allocation of Condemnation Proceeds. JISTA alleged that there was a pending quiet title action prior to the condemnation of the property in question; that JISTA was a party to that action. JISTA's motion sought declaration that it was entitled to the funds paid into court "and to all damages that may be assessed in the Condemnation Action for the taking of [the property]."

JISTA requested a jury trial "on the commissioners' award and its right thereto." The request was denied at the commencement of the hearing on the motion for allocation of the condemnation proceeds. The trial court's docket entry dated September 17, 2007, states, "JISTA moves for jury determination, which is overruled, but which is to be a continuing objection."

Point I argues that the trial court erred in denying JISTA's request for jury trial in the allocation phase of the condemnation action "because both JISTA and Grant claimed to be the rightful owner of the property at the time of the condemnation order, and their claims both raised factual issues identical to a quiet title action, and were claims at law."

Condemnation proceedings are governed by statute. The City of Branson's action to condemn the property that is the subject of this appeal was undertaken pursuant to § 99.820.1(1) and (3), RSMo Cum. Supp.2005. Section 523.053, RSMo 2000, prescribes the procedure for distribution of condemnation awards among parties claiming an interest in the condemned property.[2]

Section 523.053.1 provides that if more than one party claims a determinable interest in proceeds of a commissioners' award, but those parties do not file an agreement that sets out the percentages in which the award is to be divided among them, then, within the time stated in the statute, "any defendant claiming such an interest may by motion for distribution petition the court in which said cause is pending for a determination of the percentage of the commissioners' award to which each of said parties is entitled." Section 523.053.2 states that when this occurs, "[w]ithin thirty days after the filing of such motion, the court having jurisdiction of said cause shall determine the per-

---

2. *State ex rel. State Highway Comm'n v. Eilers*, 445 S.W.2d 374, 377 (Mo.1969), acknowledges that the adoption of § 523.053, RSMo Supp.1965, "established a definite procedure for distribution of condemnation awards among interested defendants." The text of § 523.053, RSMo 2000, is unchanged from the text of the statute as originally enacted in 1965.

centage of the award to which each party having an interest therein is entitled. Any party aggrieved of the determination of interests made by the court shall have the right to appeal therefrom, and the same shall be considered as a final judgment for such purposes."

A number of cases have addressed requests for jury trials on issues other than damages in condemnation cases. *Washington University Medical Center Redevelopment Corp. v. Komen*, 637 S.W.2d 51, 53 (Mo.App.1982), noted that "condemnation proceedings are *sui generis*"; that attempts to analogize condemnation proceedings with other civil actions are seldom successful. *State ex rel. State Highway Comm'n v. Hammel*, 290 S.W.2d 113, 118 (Mo.1956), explained that "the landowner is not entitled to a jury on any question except the determination of the amount of damages in the trial of exceptions." *Chicago Great Western R. Co. v. Kemper*, 256 Mo. 279, 166 S.W. 291, 293 (1914), observed, "This right to a trial by a jury only exists as to the amount of damages or compensation." In *Kansas City Suburban Belt R. Co. v. Kansas City, St. L. & C.R. Co.*, 118 Mo. 599, 24 S.W. 478, 483 (1893), the court, likewise, stated, "Defendants were accorded a jury trial on the question of compensation, and *upon that issue alone were they entitled to a trial before a jury.*" (Emphasis added.)

Grant correctly points out that the trial court lost its authority to proceed with the quiet title action directed to the property that is subject to the condemnation proceeding once the order allowing condemnation was entered. Upon payment of the commissioners' award into the trial court,

the condemnor, the City of Branson, was vested with title. Any claim by Grant or JISTA was limited to a claim to the proceeds generated by the commissioners' award. The proceeding regarding Grant's and JISTA's claims to the commissioners' award was an *in rem* action directed to the fund deposited into the registry of the court.[3] *State ex rel. State Highway Comm'n v. Eilers*, 445 S.W.2d 374, 376 (Mo.1969). The amount of the award that was deposited with the trial court became the *res* in the condemnation action. *Id.* The action was one in equity.

JISTA contends, however, that because Grant withdrew the funds after the trial court made its determination pursuant to § 573.053, the action was converted into one *in personam*. JISTA relies on language in *Eilers* to support that contention. *Eilers* addressed a trial court's right to enter an *in personam* judgment when, following judgment determining damages based on exceptions in a condemnation case, the amount withdrawn exceeds the amount finally awarded. *Eilers* found that "if it be determined that the amount distributed to [owners of property that was condemned] was in excess of the damages finally awarded, the court would have jurisdiction to enter an *in personam* judgment for recovery of the excess." 445 S.W.2d at 377. Those are not the facts in this case. JISTA's reliance on *Eilers* is misplaced.

The law that the only issue in a condemnation case for which a party is entitled to a jury trial is the issue of damages following the filing of exceptions to commissioners' awards was long-standing prior to the

---

**3.** Neither party could claim title to the condemned property once the city paid the commissioners' award into court. The condemnation action vested title to that property in the city. Quiet title was no longer a remedy of which either party could avail itself in that

a party must rely on the strength of its own title in order to have standing to maintain an action in quiet title. *See Pitts v. Pitts*, 388 S.W.2d 337, 341 (Mo.1965); *Thurmon v. Ludy*, 914 S.W.2d 32, 34 (Mo.App.1995).

1965 enactment of § 523.053. Had the legislature intended to grant a jury trial on a motion for determination of the percentage of a commissioners' award to which a party is entitled, the legislature could have so provided. It did not. Section 523.053.2 states only that "the court having jurisdiction of said cause shall determine the percentage of the award to which each party having an interest therein is entitled."[4] Point I is denied.

### Point III

For the reasons hereafter stated, this court finds that Point III is determinative of this appeal. Point III is directed to findings and conclusions of the trial court regarding Grant's status as a *bona fide* purchaser of the property in question. "A bona fide purchaser is one who pays a valuable consideration, has no notice of outstanding rights of others, and who acts in good faith." *Johnson v. Stull*, 303 S.W.2d 110, 118 (Mo.1957); *accord: Brown v. Mickelson*, 220 S.W.3d 442, 452 (Mo. App.2007); *In re Idella M. Fee Revocable Trust*, 142 S.W.3d 837, 842 (Mo.App.2004); *Johnson v. Mervyn W. Jenkins, Inc.*, 904 S.W.2d 586, 589 (Mo.App.1995). "A bona fide purchaser takes free of adverse claims to prior, unrecorded interests in the property." *In re Idella Fee Revocable Trust, supra*.

The trial court concluded that "[b]oth Wave Crest and Grant took title to the real estate as *bona fide* purchasers, for valuable consideration, and without actual notice of claims of JISTA under the deeds in escrow deposited by BHA with Tri Lakes Title." JISTA contends this was error.

BHA conveyed the property that is the subject of this appeal to Wave Crest. Wave Crest conveyed the property to Grant. The trial court's findings of fact regarding the conveyance of the property to Wave Crest and Grant include:

. . .

15. On March 9, 1993, for valuable consideration, Wave Crest purchased [the property in question] from BHA, and took title to said property by warranty deed.

. . .

20. On November 3, 1993, by its warranty deed, Wave Crest conveyed [the property in question] in Branson Hills to Grant for the sum of $2,600,000.00. The warranty deed from Wave Crest to Grant was filed in the Recorder's Office of Taney County, Missouri, on November 12, 1993, and was placed in the books of the county on November 19, 1993, at 10:47 a.m.

21. On November 3, 1993, Barry Carter on behalf of JISTA executed an "Affidavit of Record" which stipulated, among other things, that JISTA claimed a security interest in [the property in question], and to which was attached metes and bounds descriptions of said lots. The Affidavit of Record was filed in the Recorder's Office on November 15, 1993, and was placed in the books of the Recorder's Office on November 19, 1993 at 12:59 p.m.

. . .

31. The court further finds that Wave Crest and Grant were generally aware of a dispute and litigation between BHA and JISTA, but there were no facts that were such that either was under an affirmative obligation to in-

---

4. *Compare* § 523.050.2, RSMo Supp.2005, that specifies that the action permitted by that section "shall, at the request of either party, be made by a *jury*" (emphasis added) and § 523.060, RSMo 2000, that addresses "the right to *trial by jury* ... if either party file exceptions to the award of commissioners in any condemnation case." (Emphasis added.)

quire into the particulars of that dispute and litigation. The bare knowledge that litigation existed did not put either Wave Crest or Grant on notice of or impose on either of them a duty to inquire into any interest of JISTA in [the property in question], beyond the interest which was disclosed on the face of the title policies received by Grant and Wave Crest, and beyond the constructive knowledge which Wave Crest and Grant had with respect to and on the face of the recorded Universally Subordinated Deed of Trust.

32. Tri–Lakes, Hogan Land Title and First American did not advise either Wave Crest or Grant of any information which would have led to the discovery of the deeds held by Tri–Lakes in escrow. Tri–Lakes did not advise Hogan, First American, Wave Crest or Grant of the existence of the deeds which it held in escrow. The court finds that neither Wave Crest nor Grant had specific knowledge of the existence of a document entitled "Master Infrastructure Contract" and[,] under the circumstances, were not put on inquiry as to its contents.

33. The court finds that neither Wave Crest nor Grant had either actual or implied notice of JISTA's claim to [the property in question] through the warranty deeds which were held in escrow, prior to the time they took title to the real estate. Both Grant and Wave Crest relied on the title insurance policies issued by First American, and had a right to rely on such policies. The court finds that both Wave Crest and Grant were *bona fide* purchasers of [the property in question], without actual notice of the security interest claimed by JISTA under the deeds which BHA had put in escrow with Tri–Lakes Title on September 23, 1992.

. . .

Its conclusions of law state:

. . .

2. The "Affidavit of Record" filed by JISTA was filed subsequent to the dates on which Wave Crest and Grant took title to the [real estate in question], and both Wave Crest and Grant took title to the real estate without constructive notice of JISTA's claims to an interest in the property through the deeds which had been placed in escrow by BHA.

3. Both Wave Crest and Grant took title to the real estate as *bona fide* purchasers, for valuable consideration, and without actual notice of the claims of JISTA under the deeds in escrow deposited by BHA with Tri Lakes Title.

. . .

5. At the time the real estate was condemned by the City of Branson, Missouri, Grant held title to [the property in question] to the exclusion of JISTA. Consequently, Grant is entitled to the commissioners' award paid into the registry of the circuit court in this cause, in its entirety.

6. The Court finds that the Notice of Lis Pendens filed by JISTA in [the Christian County suit between JISTA and BHA] was filed subsequent to the date upon [sic] which Grant took title, and operated prospectively from the date it was filed, and at the time Grant obtained title to the real estate, on November 3, 1993, it took the property without the constructive notice of the above-described litigation.

7. Because of its failure to record any interest it claimed in the real estate under the deeds in escrow, and because of its failure to otherwise notify Grant or Wave Crest of its claimed interest in the property under said deeds, JISTA is estopped to raise the issues at this point,

Grant having changed its position to its detriment.

. . .

9. At the time the City of Branson condemned [the property in question], title to that real estate was vested in Grant to the exclusion of any interest claimed by JISTA. Consequently, Grant is entitled to the Commissioners' Award dated December 20, 2005, in the amount of $4,234,340.00, plus such interest as has accrued thereon.

■ Point III argues that the trial court erred in finding that Grant was a *bona fide* purchaser "in that (A) Grant admitted it knew of the JISTA Deed of Trust prior to purchasing [the property in question], and was therefore charged with constructive knowledge of the provisions of the deed of trust, including its references to the contract between BHA and JISTA, and (B) Grant admitted it knew of the *BHA v. JISTA* litigation [that was pending in Christian County] before purchasing [the property in question] wherein the First Amended Petition [in the Christian County lawsuit] referenced warranty deeds in escrow and the JISTA Deed of Trust, and Grant therefore had a duty to inquire as to the extent of JISTA's interest and was not a bona fide purchaser of [the property in question]."

JISTA does not dispute the trial court's finding that neither Tri–Lakes nor any other title company involved with the Branson Hills property advised Wave Crest or Grant that there were deeds related to the property in question that were being held in escrow. The trial court found that Grant had no notice of the deeds that were held in escrow. The trial court further found "that neither Wave Crest nor Grant had specific knowledge of the existence of a document entitled 'Master Infrastructure Contract' and under the circumstances, were not put on inquiry as to its contents."

The record before this court does not establish that Grant had notice of the terms of the business relationship between BHA and JISTA so that Grant had a duty to investigate that relationship in a manner that would reasonably have disclosed the existence of unrecorded deeds in escrow. Grant was not put on notice that JISTA claimed an interest in the property in question prior to Grant's acquisition of the property. Furthermore, this court knows of no authority, nor does JISTA cite authority, for the proposition that Grant, if it had notice of litigation pending between BHA and JISTA, had a duty to inquire into the pleadings in that lawsuit to determine if the lawsuit involved a claim by JISTA to the property in question. JISTA had not filed notice of *lis pendens* claiming an interest in the property in question until after Grant acquired the property and filed the deed by which it received title.

Giving due deference to the trial court's assessment of the credibility of witnesses and viewing the evidence in the light most favorable to the judgment, the trial court's determination that Grant was a *bona fide* purchaser of the property in question is supported by substantial evidence. It is not against the weight of the evidence. It is not an erroneous declaration of law or an erroneous application of law. Point III is denied.

### Point II is Moot

Point II is directed to the trial court's finding that a partial settlement agreement between BHA and JISTA in an action in the Circuit Court of Christian County was a release by JISTA of all debts or obligations of BHA to JISTA. Point II argues that the trial court's finding in that regard was error. It further

argues that the trial court erred in finding that, after that agreement was reached, deeds in escrow were no longer security for obligations BHA owed JISTA under the Master Infrastructure Contract between those parties. This issue is moot in that, as determined regarding Point III, *supra,* Grant was a *bona fide* purchaser of the property in question and, therefore, took title free of JISTA's adverse, unrecorded interests in the property. *In re Idella M. Fee Revocable Trust,* 142 S.W.3d at 842.

The judgment is affirmed.

LYNCH, C.J., and RAHMEYER, J., concur.