

# In the Missouri Court of Appeals
## Eastern District

### WRIT DIVISION SIX

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel., SHARON WATSON, et al., | ) | No. ED101151 |
| | ) | |
| | ) | Circuit Court of St. Louis County |
| Relators, | ) | Cause No. 07SL-CC01335 |
| | ) | |
| v. | ) | |
| | ) | Writ of Prohibition |
| THE HONORABLE THEA SHERRY, | ) | |
| Circuit Judge, 21st Circuit, | ) | |
| | ) | |
| Respondent. | ) | Filed: July 8, 2014 |

## I. Introduction

Relators, Sharon A. Watson, ("Sharon Watson"), Clinton L. Watson ("Clinton Watson"), Diarra K. Morris ("Morris"), as Personal Representative for the Estate of the deceased Juanita Watson, and Jelani Aitch ("Aitch") (collectively, "Relators") filed a Petition for Writ of Prohibition with this Court, seeking to prohibit the enforcement of an Order on Writ of Possession of February 26, 2014, by Circuit Judge Thea A. Sherry ("Respondent") in the underlying lawsuit pending in the Circuit Court of St. Louis County, Case No. 07SL-CC01335, City of Richmond Heights, Missouri v. Clinton L. Watson, et al., ("Lawsuit"). The Order on Writ of Possession ordered possession of the property at 1705 Berkeley Avenue, Richmond Heights, to be delivered on March 5, 2014, to the City of Richmond Heights ("the City"), based on an Order of Condemnation entered on March 19, 2008. We previously issued a Preliminary Order in Prohibition on March 4, 2014. The Preliminary Order in Prohibition hereby is made absolute.

## II. Procedural Background

The history of this case begins with the July 12, 2006 adoption, and August 12, 2006 effective date of Ordinance 4991, Ordinances of the City of Richmond Heights, Missouri, which the Richmond Heights City Council adopted pursuant to the Real Property Tax Increment Allocation Redevelopment Act, Sections 99.800 to 99.865, Revised Statutes of Missouri, (the "TIF Act"). The TIF Act authorizes municipalities to utilize eminent domain to take private property to facilitate redevelopment.[1] Ordinance 4991 designated a portion of the City consisting of approximately 63 acres as a redevelopment area, found that such area was a blighted area, and approved the redevelopment plan and redevelopment project for the Hadley Township redevelopment area, among other things.[2]

In March 2008, Respondent entered its Order of Condemnation condemning the property in the redevelopment area, including the property at 1705 Berkeley Avenue, Richmond Heights ("the Property"). Those with an ownership interest in the Property and named as defendants in the condemnation proceeding include: Sharon Watson, in co-tenancy with others, by operation of law, by direct descent in succession of title, by operation of trust, or otherwise; Sharon Watson's brother Clinton Watson, in co-tenancy with others, by operation of law, by direct descent in succession of title, by operation of trust, or otherwise and Successor Trustee of the George T. and Mary E. Watson Trust dated November 18, 1997; Juanita Watson, deceased, whose daughter Morris became the duly appointed personal representative of the Estate of Juanita Watson and thereby took her ownership interest in the Property in co-tenancy with others, by operation of law, by direct descent in succession of title, by operation of trust, or otherwise; Georgia Crenshaw ("Crenshaw"), the sister of Sharon and Clinton Watson, in co-tenancy with others, by operation of law, by direct descent in succession of title, by operation of trust, or otherwise (who is not a party to this writ proceeding); and Aitch, son of Sharon

---

[1] Article I, section 28 of the Missouri Constitution provides that ". . . when an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be judicially determined without regard to any legislative declaration that such use is public."

[2] The current development site at issue consists of 19.52 acres.

Watson and has resided in the Property for periods since 1973 with the permission of Sharon Watson, Clinton Watson, Morris and Crenshaw.[3]

On May 13, 2008, the court-appointed commissioners filed their commissioners' report assessing damages, and sent notice to the Relators of the same. Damages were assessed at $322,344 for the condemnation of the Property. The City did not pay the commissioners' award for damages until December 2, 2013, at which time the court sent notice to the Relators by certified mail of the deposit of the commissioners' award into the registry of the court. The notice of payment stated that the City deposited $429,962.74 as full payment of the commissioners' award, plus interest for the condemnation of the Property.

On or about December 30, 2013, the City filed its Motion for Writ of Possession against Aitch, seeking an Order on Writ of Possession to deliver possession of the Property to the City on or before March 5, 2014. The City asked to pass the hearing that was originally scheduled on its motion for January 24, 2014, but renewed the motion and a hearing was held on February 26, 2014. Respondent entered an Order directing the sheriff of St. Louis County to deliver possession of the Property to the City on or before March 5, 2014. Aitch, appearing *pro se* at the hearing, argued, *inter alia*, that the court lacked jurisdiction to hear the motion.

On March 4, 2014, Relators filed their Petition for Writ of Prohibition, along with Suggestions in Support thereof, seeking to prohibit Respondent from taking any further action in the underlying condemnation matter other than dismissing the Petition in Condemnation because the City's legislative authority to proceed with the condemnation of the Property had lapsed and expired, and Respondent therefore had no authority and acted in excess of the court's jurisdiction when entering an Order on Writ of Possession. Relators explained that the City had only five years from the date of the adoption of

---

[3] Anthony and Mary Reyes also claimed an interest in the Property as a result of a judgment of $652,921.06 rendered in July 2006 in the United States District Court for the Northern District of California. Because this was registered as a foreign judgment in the Circuit Court of St. Louis County in August 2006, the Reyeses were also defendants in the condemnation action. This Court affirmed the Circuit Court of St. Louis County's 2007 judgment holding that the Reyeses' "execution sale of the premises 1705 Berkley Avenue should proceed without further delay." Watson, et al. v. Reyes, et al., 249 S.W.3d 240 (Mo. App. E.D. 2008).

3

Ordinance No. 4991 within which to "acquire by eminent domain" Relators' Property, and the City had not "acquired" the Property before its legislative authority lapsed and expired. This Court issued a Preliminary Order in Prohibition on the same day, ordering Respondent to answer Relator's Petition and also refrain from all actions regarding the premises until further order of this Court. Thereafter, Respondent filed an Answer and Suggestions in Opposition to the Petition for Writ of Prohibition. The parties also filed briefs pursuant to Rule 84.24 of the Rules of Civil Procedure.

### III. Discussion

A. A writ of prohibition is appropriate where parties will suffer irreparable harm.

The power to issue remedial writs derives from Article V, Section 4.1 of the Missouri Constitution. Writs of prohibition are issued in three general categories: 1) where there is an usurpation of judicial power because the trial court lacks personal or subject matter jurisdiction; 2) where there exists a clear excess of jurisdiction or an abuse of discretion such that the court lacks the power to act as contemplated; or 3) where there is no adequate remedy by appeal. State ex rel. Dir. of Revenue v. Kinker, 209 S.W.3d 1, 2 (Mo. App. E.D. 2006) (citing State ex rel. Dir. of Rev. v. Mobley, 49 S.W.3d 178, 179 (Mo. banc 2001)). Prohibition is a discretionary writ that may be issued to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power. State ex rel. Broadway-Washington Assocs., Ltd. v. Manners, 186 S.W.3d 272, 274 (Mo. banc 2006) (abrogated on other grounds).

The City argues that a writ of prohibition is not appropriate because Relators could have appealed the issue of whether the TIF Act's Section 99.810.1(3) precludes the City from the acquisition when Relator Clinton Watson argued the issue in his "Motion for Assessment of Heritage Value and Assessment of Interest" filed on July 19, 2012, which was after 2011, the expiration of five years under the statute at issue. The circuit court's August 14, 2012 determination that the court "lacks jurisdiction to handle anything other than payment for property" effectively passed on making a decision on this issue, although this order finding a lack of jurisdiction was not appealed. However, Respondent's later February 26, 2014 order granting a Writ of Possession was a judgment that ordered an immediate change in

4

possession of the Property rather than the payment for the property. Once Relators give up possession of the Property, demolition of the Property will begin. No appeal can undo the ensuing consequences. Should this Court find Respondent lacked the authority to act as it did here, an extraordinary writ of prohibition is therefore a means of avoiding the irreparable harm that Relators would suffer otherwise.

B.  The circuit court has subject matter jurisdiction.

Next, we preface our discussion of the requirements of the TIF Act with a brief analysis of the difference between jurisdiction and authority to act under a statute. The TIF Act authorizes the use of tax abatements to support the redevelopment of blighted areas, and condemnation and eminent domain are but tools used to facilitate such redevelopment. Meramec Valley R-III Sch. Dist. V. City of Eureka, 281 S.W.3d 827, 829 (Mo. App. E.D. 2009). Condemnation proceedings are governed by statute, City of Branson v. Branson Hills Master Ass'n, Inc., 292 S.W.3d 467, 471 (Mo. App. S.D. 2009), and writs of prohibition will be issued when a relator "show[s] that the condemnation proceedings are unauthorized by law." Tierney v. Planned Indus. Expansion Auth., 742 S.W.2d 146, 149-50 (Mo. banc 1987). At one time, it was common to refer to proceedings unauthorized by law as proceedings where the circuit court "lacks subject matter jurisdiction" to continue to enter the orders. Id. However, as this Court expressed in St. Louis County v. Berck, 322 S.W.3d 622, 627 (Mo. App. E.D. 2010), the J.C.W. ex rel. Webb v. Wyciskalla decision clarified subject matter jurisdiction, distinguishing between a circuit court's statutory limitation to act as opposed to a lack of jurisdiction. 275 S.W.3d 249, 252-54 (Mo. banc 2009). This distinction is critical here in determining not whether the circuit court lacked *jurisdiction* to enter an order on Writ of Possession, but whether the circuit court lacked *statutory authority to act* because the City exceeded the time allowed to "acquire" the Property. Nothing changes the fact that this condemnation case is a civil case over which a circuit court has constitutionally vested subject matter jurisdiction. Berck, 322 S.W.3d at 627.

C.  Once the deadline for acquisition was missed, the circuit court was not authorized to act.

The TIF Act authorizes municipalities to approve redevelopment projects and designate the areas for those projects. Section 99.820.1(1). Chapter 523 authorizes the use of condemnation proceedings for

5

the appropriation of land within the state for any purpose. Berck, 322 S.W.3d at 628. Moreover, and directly at issue in this case, the TIF Act requirements for the redevelopment plans are set forth in Section 99.810.1, and include required findings of estimated dates, "provided that no property for a redevelopment project shall be acquired by eminent domain later than five years from the adoption of the ordinance approving such redevelopment project[.]" Section 99.810.1(3).

In interpreting this statute, Missouri courts have held that a condemnor "acquires" the condemned property through eminent domain, i.e., a "taking," on the date on which the condemnor pays the amount of the commissioners' award into the court. Manners, 186 S.W.3d at 275; State ex rel. Missouri Highway Comm'n v. Starling Plaza P'ship, 832 S.W.2d 518, 520 (Mo. banc 1992). "Until the commissioner's award is paid, the condemnor has no title to or right to possession and control of the subject property. It is only after the award is paid that the condemnor has 'acquired' the property." Manners, 186 S.W.3d at 275. See, e.g., State ex rel. State Highway Comm'n. v. Johnson, 592 S.W.2d 854, … (Mo. App. E.D. 1979) (since transfer of ownership occurs at the time the commissioners' award is paid into the court's registry, defendant lessees' acquisition of fee interest subsequent to that time could not effect transfer of that fee to State Highway Commission through subsequent condemnation proceedings brought against the lessees). We find no authority to suggest otherwise, including the City's argument that a filing of the commissioners' report without exceptions would satisfy an acquisition through eminent domain. The City's argument that it acquired equitable title to the Property when the commissioners' award became final and enforceable by either party, rather than when the commissioners' award was paid, fails as it is contrary to Missouri precedent.

We find instructive our recent decision in the Berck case, wherein this Court specifically held that the language of Section 99.810.1(3) of the TIF Act, at issue here, precluded the trial court from allowing the county to acquire property by condemnation more than five years after the adoption of the ordinance approving the redevelopment, although this statutory limitation did not deprive the trial court of subject matter jurisdiction over the civil condemnation action. 322 S.W.3d at 616. In Berck, both the county and the property owners filed exceptions to the commissioners' award once it was set, and the county filed a

6

motion to dismiss its own condemnation petition, which this Court deemed as a formal election to abandon the condemnation. Id. at 625-32. Although the Berck facts are distinguished in that no party here filed exceptions or appealed the commissioners' award, the stated holding still applies.

Moreover, in the Manners case, the relators sought to dismiss a petition for condemnation when it finally was filed five years after the adoption of the ordinance approving the redevelopment project. 186 S.W.3d at 273-74. The Missouri Supreme Court held that the word "acquire" as used in Section 99.810.1(3) does not refer to the filing of a condemnation petition, but instead, "refers to the transfer of ownership from the property owner to the condemnor upon the payment of the commissioner's award into the court or to the property owner." Id. at 275. Again, the facts of Manners are different, but the holding is the same here.

Here, Ordinance No. 4991 approving the subject redevelopment project was adopted in 2006. Thus, the property for the redevelopment project must have been acquired by eminent domain no later than five years – 2011. See Section 99.810.1(3). As stated supra, the City did not pay the commissioners' award for damages until December 2, 2013, which is the date the City would have "acquired" the Property. Therefore, the City was too late. At that point, because the "acquisition" was no longer possible in conjunction with the redevelopment project, the circuit court, having no more authority to act, had no choice but to dismiss the condemnation action. Moreover, the Writ of Possession the City sought in 2013 also came too late, as did the circuit court's order granting that Writ of Possession in 2014. The circuit court should have dismissed the Writ of Possession as well. Because the legislative authority for the underlying proceeding in condemnation had expired as a result of the statutory limitations imposed by the legislature pursuant to Missouri Revised Statutes Section 99.810.1(3), the circuit court exceeded its authority in doing otherwise.

The City further argues that the broader condemnation statute, Chapter 523, provides the one and only way in which a condemning body may effectively abandon a condemnation. The City cites Missouri Supreme Court Rule 86.06, which states that a municipality has thirty days after a condemnation judgment becomes final to "elect to abandon the proposed appropriation of any property, by an instrument

7

in writing to that effect,"[4] in arguing that if the City's final judgment here is not an acquisition of the Property, it will judicially create another means for condemning bodies to abandon.  We disagree.

The TIF Act "translate[s] into working machinery the rights, power and privileges authorized in Article VI, Section 21" of the Missouri Constitution, which provides local governments with the power to implement plans for the redevelopment of blighted areas.  City of North Kansas City v. K.C. Beaton Holding Co., LLC, 417 S.W.3d 825, 831-32 (Mo. App. W.D. 2014).  No plan may be adopted without the governing body finding, among other things, that the redevelopment project area is a blighted area or conservation area as defined in Section 99.805[5] and that the area is neither subject to, nor is it reasonably anticipated that it will be subject to, growth through investment by the private sector.  Section 99.810; Tax Increment Fin. Comm'n of Kansas City v. J.E. Dunn Constr. Co., Inc., 781 S.W.2d 70, 73 (Mo. banc 1989) (providing a detailed discussion on the TIF Act and its constitutionality).  While the TIF Act sets forth the broad framework in which a condemnation must take place, it establishes a variety of strict procedural requirements.  See id. at 74 n.2.  Within this framework and the strict requirements of the TIF Act, "the step-by-step procedures of condemnation are but one potential piece of the larger TIF project," Berck, 322 S.W.3d at 630.  Accordingly, the TIF Act does not expand condemnation procedures to be utilized by condemning bodies to be released from their obligations.  Rather,

> the exercise of eminent domain is in derogation of the right of the citizen; . . . a statute delegating that power must be strictly construed, and the person or body claiming the right to exercise such delegated power must be able to point to the statute which either expressly or by necessary implication confers that right.

City of Smithville v. St. Luke's Northland Hosp. Corp., 972 S.W.2d 416, 420 (Mo. App. W.D. 1998) (quoting Southwestern Bell Telephone Co. v. Newingham, 386 S.W.2d 663, 665 (Mo. App. 1965)).  It is

---

[4] This language is also mirrored in Section 523.040.1.

[5] A "blighted area" is defined as:
> an area which, by reason of the predominance of defective or inadequate street layout, unsanitary or unsafe conditions, deterioration of site improvements, improper subdivision or obsolete platting, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, retards the provision of housing accommodations or constitutes an economic or social liability or a menace to the public health, safety, morals, or welfare in its present condition and use.

Section 99.805.(1).

clear that the intent of the requirement to limit the time for acquiring property under the TIF Act, Section 99.810.1(3), was to further protect the public. But for such protections, the public may be held in "limbo" for an unnecessarily long period of time. We recognize that redevelopment plans are complex matters, dependent upon many factors, but that does not excuse a governmental body's indefinite withholding of funds equivalent to a fraction of the project costs for its own protection and to the detriment of the citizens whose lives may be largely affected by the project deemed to be for the greater good.[6] While the TIF Act prohibits the "taking" after five years, it does not eliminate all voluntary property sales. If the City cannot follow the strict procedural requirements set forth in the TIF Act, the resulting consequences are not unintended.

Respondent was not outside of its jurisdiction to rule on a condemnation case. Rather, the circuit court lacked the statutory authority to act pursuant to Section 99.810.1(3) because the time had expired whereby the City could acquire the Property for condemnation pursuant to the TIF Act. Because Relators will otherwise suffer irreparable harm, Relator's Writ of Prohibition is granted. Respondent's order on Writ of Possession is void; Respondent is prohibited from entering any order other than dismissing the condemnation.

D. An award of interest is not warranted under condemnation statute.

In addition to asking for prohibition on the Writ of Possession, Relators also seek an award of interest, based on the City's actions Relators deem tantamount to the City's abandonment of the condemnation proceedings. Relators argue that interest is warranted here because Relators lost the right to receive and use the commissioners' award for more than five years.

Section 523.045 authorizes the payment of interest on awards of damages owed by the condemnor to the owners of the condemned property. This provision states that if the condemnor has not paid the damages award, "nor timely filed its written *election to abandon* the proposed appropriation of said property or rights" within thirty days after the filing of the commissioners' report, "then interest on

---

[6] The TIF Act contemplates that the improvements in the redevelopment district will result in an increased assessed valuation of the property within the redevelopment area. J.E. Dunn Constr. Co., Inc., 781 S.W.2d at 73. Clearly, the Property, in and surrounded by a blighted area, is not expected to increase in value without being condemned.

9

the amount of any subsequent verdict for said named persons, or if there be no such verdict, then on the amount of the award, at the rate of six percent per annum from the date of filing the report shall be added to said verdict or award and paid to said named person or to the clerk for them." Section 523.045 (emphasis added).

Here, given the City's actual payment of the commissioners' award, albeit late and past the expiration of the five-year time period allowed by Section 99.810.1(3), we cannot find that the City ever "elected" to "abandon the proposed appropriation" of the Property. To the contrary, the City intended to effectuate the condemnation action, as it eventually paid the commissioners' award, acquired more than 100 other parcels of land, and commenced demolition of the development site. Instead, Relators chose to withdraw their motion to distribute the proceeds from the registry of the Circuit Court of St. Louis County, keep the Property, and attempt to end the condemnation by operation of law. As we have stated above, Relators have succeeded in their desired outcome: maintaining title of the Property rather than obtaining payment therefor. Although Relators lost the right to receive and use the commissioners' award for more than five years, it was Relators who chose this outcome rather than forcing a distribution of proceeds, albeit late, by executing on the commissioners' award. Additionally, Relators never lost the right to use and enjoy the Property. Conversely, the City loses the ability to take the Property through eminent domain under the TIF Act for its failure to adhere to the strict statutory requirements of Section 99.810.1(3), but no longer must pay the commissioners' award for the Property that cannot, by law, be condemned pursuant to this statute. Without finding a purposeful abandonment on the City's part here, but merely the City's failure to adhere to the legislative authority granted to it to acquire property through eminent domain, this Court does not find that the interest provision of Section 523.045 applies. Relators' request for interest is denied.

## IV.  Conclusion

This Court's Preliminary Order in Prohibition is hereby made absolute.  Respondent is directed to proceed consistent with this opinion.

_____
Roy L. Richter, Presiding Judge

Kurt S. Odenwald, J. concurs.
Robert M. Clayton III, J.  concurs.